EL PUEBLO, DEMANDANTE Y APELADO, *v.* ARROCHO Y CLEMENTE, ACUSADOS Y APELANTES.

Nos. 2287 y 2290.—*Vistos:* Julio 18, 1924. *Resueltos:* Agosto 2, 1924.

JUICIO JUSTO E IMPARCIAL—DERECHOS DEL ACUSADO—DISCRECIÓN JUDICIAL.—La justicia exige y es además la regla general que a una persona acusada de un delito debe dársele un tiempo razonable para preparar su defensa; pues si la regla fuera otra, el derecho del acusado a un juicio justo e imparcial sería a menudo destruido. Desde luego la regla es la misma cuando la representación del acusado es nombrada por la corte, y ello sin obligación de hacer demostración alguna en cuanto a testigos y a lo que se espera probar con ellos. Qué cantidad de tiempo es razonable, es generalmente una cuestión que descansa en la discreción de la corte, y el ejercicio de su discreción es revisable en apelación. Examinadas las circunstancias concurrentes en estos casos, a la luz de los anteriores principios, se resolvió que la corte de distrito abusó de su poder discrecional al negar la suspensión de las vistas y se ordenó la celebración de nuevos juicios.

SENTENCIAS de *M. Rodríguez Serra*, J. (Segundo Distrito, San Juan), condenando a los acusados por delito de asesinato en primer grado. *Revocadas, concediéndose un nuevo juicio.*

*L. Muñoz Morales* y *J. de J. Tizol,* abogados de los apelantes; *José E. Figueras, Fiscal,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El 18 de julio último se celebraron las vistas de estos recursos. Informaron los abogados de los acusados y el fiscal. Siguiendo la práctica establecida, después de un ligero cambio de impresiones, pasaron los autos a un juez para su estudio y presentación de *memorandums.* Estos fueron sometidos y una larga e intensa discusión tuvo lugar en el seno de la corte manifestándose diversos criterios en la apreciación de las varias cuestiones envueltas y en la manera de resolverlas. En algo se coincidió siempre no ya desde el comienzo de la discusión definitiva, sino desde el momento mismo de la vista, a saber: en que el juicio se había celebrado con una rapidez inusitada. Finalmente, cuando ya no existía tiempo material para escribir una opinión, cuatro de los jueces estuvieron conformes en que las sentencias debían ser revocadas ordenándose la celebración de un nuevo juicio y en tal virtud se dictaron las sentencias que constan archivadas, encomendándose al Juez Presidente que preparara dentro del término más breve posible la opinión de la corte.

Carlos Arrocho y Jacinto Clemente fueron acusados de haber violado y asesinado la niña Guillermina Rodríguez el día 20 de febrero de 1924.

Al comenzar el juicio, ocurrió lo que sigue:

"Sr. Tizol: Siento molestar a la corte, pero quiero insistir en cuanto a la fecha de la celebración del juicio y vamos a someter la siguiente moción: Comparecen en el caso arriba titulado los acusados representados por sus respectivos abogados y respetuosamente alegan: Que a pesar de las objeciones de los abogados que suscriben fué señalada la vista de este caso ,para hoy día 18 de marzo me-

diando solamente seis días de intervalo desde el día 11 del corriente en que fué contestada la acusación. Que dado el gran número de testigos de cargo que aparecen en la acusación; y dado el corto tiempo de que los abogados han podido disponer para sus investigaciones y orientación respecto a la prueba de cargo, y dada la manifiesta hostilidad que en todas sus investigaciones han encontrado, no ha sido posible preparar la defensa de este caso para asegurar los derechos sustanciales de los acusados. Por tanto, suplicamos a la Corte se sirva posponer la celebración de este juicio a fin de tener tiempo suficiente para garantizar como es debido los derechos de los acusados en un caso como el presente que reviste la mayor gravedad dentro de nuestro Código Penal.

"En el acto de la argumentación de dicha moción, la corte llamó la atención al Sr. Tizol para que limitase el tiempo de su discusión por entender que esta cuestión había sido levantada con anterioridad y que había tenido ante sí y ponderado todas las razones a favor y en contra de la misma, de lo cual protestó dicho abogado por entender que se trataba de un delito grave y que debía dársele la mayor liberalidad posible.

"El Fiscal se opuso a que se considerara dicha moción por entender que esta cuestión había sido discutida y resuelta por la corte, y por entender que esta cuestión debió haberse hecho en otro momento y no en el momento en que iban a entrar en juicio.

"La corte declaró sin lugar la moción de suspensión, y la defensa tomó excepción, manifestando su deseo de fundamentarla. La corte le advirtió que no era necesario fundamentar la excepción, sino que bastaba simplemente con consignarla, y la defensa tomó excepción de esta resolución."

Solicitó entonces Arrocho que se le juzgara separadamente y la corte accedió.

Se procedió a la constitución del jurado y—

"Durante el acto de las recusaciones la defensa recusó motivadamente al señor Manuel Colón por entender que dicho Sr. había formado opinión del caso. La corte denegó dicha recusación pues a preguntas de la corte dicho jurado manifestó no tener formada una opinión arraigada y firme del caso y de poder rendir un veredicto justo e imparcial de acuerdo con la prueba presentada.

La defensa tomó excepción de la resolución de la corte.

"La misma cuestión fué levantada en cuanto al jurado Sr. Fran-

cisco Lavandero. La corte negó la recusación por el mismo fundamento que el anterior, y la defensa tomó excepción.

"El mismo incidente se levantó en cuanto al jurado Sr. Augusto Bubonis. La corte negó dicha recusación por el mismo fundamento que el anterior, y la defensa tomó excepción.

"La misma cuestión fué levantada en cuanto al jurado Sr. Manuel Román. La corte negó la recusación por el mismo fundamento que el anterior, y la defensa tomó excepción."

Practicada la prueba el Jurado declaró culpable al acusado y el 28 de marzo la corte lo condenó a sufrir la última pena.

Al día siguiente se llamó el caso de Clemente para juicio y ocurrió lo que sigue:

"(Def.)—A reserva de reproducirla por escrito oportunamente, y pidiendo perdón a la corte por la insistencia, me voy a permitir reproducir la moción de suspensión del caso, a nombre del acusado. Comparece el acusado en este caso y por conducto de su abogado que habla, respetuosamente expone a la corte: Que en este caso fueron acusados simultáneamente Carlos Arrocho y Jacinto Clemente de un delito de asesinato en primer grado. Que a petición de una parte, cuando fué señalado el juicio para el día de ayer, es decir, a petición del representante de Carlos Arrocho, y sin que esta parte pudiera evitarlo por ser un derecho ministrial, solicitó que el juicio fuera separado. El juicio se celebró en el día de ayer y el jurado dió determinado veredicto. Con este motivo, entiende esta representación, que además de las razones que anteriormente alegó para la suspensión del caso, existen otras razones nuevas que hacen y le obligan a insistir con la corte para dicha suspensión. Las razones son las siguientes: Para este juicio contra Jacinto Clemente y Carlos Arrocho, fueron citados determinado número de jurados, ochenta de ellos comparecieron en el día de ayer antes de empezar el juicio de Arrocho; constituído el jurado que iba a conocer del caso de Arrocho, el juez ordenó que el resto de los jurados permaneciera en el día aquí, pendientes de la terminación del caso de Arrocho para formar parte en el caso que se va a celebrar hoy contra Clemente. Con este motivo la corte verá que la mayor parte de los jurados que han de formar parte en el caso de Clemente, han estado presentes en la celebración del caso de Arrocho, y han tenido oportunidad bastante para apercibirse de la prueba de aquel caso que está perfectamente ligada con la que va a ser traída en el caso de Clemente.

La presencia de estos jurados en la corte y el interés que este caso
ha despertado en la comunidad, hace creer a esta parte, respetuosa-
mente, que el veredicto dado en la noche de ayer, es general y es
conocido por el resto de los jurados, y cree que este veredicto, in-
dudablemente, ha de ejercer una gran influencia en contra de los
derechos sustanciales del acusado. Entiende esta parte, que esta
corte tiene un término regular establecido de juicios, y que ese tér-
mino no sería interrumpido con motivo de la suspensión de este caso,
pues para hoy está señalado otro caso, y creo que tratándose de un
caso tan grave como éste, debe concedérsele al acusado el derecho
de que este juicio pueda verse fuera no solamente de la presión que
existe en la opinión pública, sino fuera de la presión legal que pu-
diera existir en estos jurados si se celebrara seguida después de ha-
berse celebrado el caso de Arrocho, en que ha venido un veredicto
conocido por todo el mundo. Además entiende esta parte que el
fiscal va a usar por sorpresa prueba que no está puesta en la lista
del Gran Jurado, de los testigos que comparecieron ante el Gran Ju-
rado, de cuya prueba no ha tenido tiempo la defensa para prepa-
rarse, para contrarrestarla. En caso de que vaya a ser presentada,
solicito que además de las razones expuestas, lo suspenda para te-
ner tiempo suficiente para contrarrestar la prueba del testigo Pedro
Rodríguez, caso de que este testigo sea presentado, porque no vino
ante el Gran Jurado.

"(J.)—La corte desea hacer constar que ayer, después de consti-
tuído el jurado, excusó a todos los demás miembros que habían sido
convocados, y los excusó para hoy a las nueve de la mañana. No
los dejó pendientes hasta la terminación de aquel caso, sino hasta
esta mañana.

"(Def.)—No tiene nada de particular que debido al maremag-
num del día de ayer, olvidara algo. Tengo la seguridad que hasta
por la noche no fueron excusados hasta por la mañana.

"(J.)—Tengo la seguridad que fueron excusados hasta hoy por
la mañana. Quiero oir al fiscal.

"(Fis.)—Para oponerme a la suspensión del caso de Jacinto Cle-
mente, en primer lugar, porque carece de fundamento esta alegación
y carece en absoluto de razones para esta suspensión. Primero, por-
que el juicio contra Jacinto Clemente y Carlos Arrocho, fué seña-
lado conjuntamente para el día de ayer. Por moción presentada
por uno de los acusados, se separaron los juicios, y solicitó el abo-
gado de Arrocho, que éste se viera primero, y la corte así lo ordenó,
manifestando que el juicio del otro se vería a continuación. De

modo que ambos casos estaban señalados para ayer, a no ser por dicha moción. Pero la moción de separación de vista, a la que entiende el fiscal, tenía derecho el acusado, hizo que se dividiera el caso en dos, celebrándose la primera parte, la que concernía a Arrocho, para celebrar inmediatamente después la de Jacinto Clemente. Respecto al hecho de que los jurados que asistieron o fueron citados para el juicio conjunto, no hayan sido excusados por la corte hasta después de verse toda la prueba, es un hecho que carece de fundamento, puesto que tan pronto se constituyó el jurado en el caso de Arrocho, la corte excusó a los demás para que comparecieran en el día de hoy, a las nueve de la mañana; para el conocimiento general de la corte, los jurados que no entendieron en el caso de Arrocho, no estaban presentes en la corte, porque estaban excusados hasta hoy. Respecto al hecho de que el veredicto rendido en el caso contra Carlos Arrocho, pudiera tener ninguna clase de influencia en el jurado, porque entiende la defensa que es un veredicto conocido por el jurado, ese veredicto no solamente será conocido por el jurado, sino por todo el país. Tan pronto se haya publicado el conocimiento que pudiera tener cualquiera de esos jurados, en el día de hoy, con mucha más razón lo tendrá en otra fecha posterior, porque habrá más tiempo para que esta noticia se publique. No los jurados de San Juan, sino de la Isla, tendrán conocimiento de esto. Con respecto a la creencia de que tengo prueba que se va a presentar, esto no lo debe tomar en consideración la corte, porque eso son avances de opinión que no tiene ninguna razón el compañero para hacerlas: puedo o nó presentar esa prueba. Es un avance de opinión que no puede sentar ningún principio para que la corte se base para conceder la suspensión. Por tanto, entiendo que este caso está perfectamente señalado para hoy, señalado dentro de ley, y no hay ninguna razón legal para ser transferido para otro día.

"(J.)—La corte declara sin lugar la moción.

"(Def.)—Tomo excepción."

Cuando el fiscal presentó al testigo Arturo Rodríguez, se insistió en la suspensión así:

"(Def.)—Señor Juez: Al empezarse este juicio, hice una moción para solicitar la posposición de este caso, y entre una de las razones que ponía yo para esta posposición era que tenía entendido que el fiscal tenía prueba que no figuraba en la lista de testigos que declararon ante el Gran Jurado; que para mí era una sorpresa, y necesitaba tiempo suficiente para prepararme contra ella. Fuí irónica-

mente criticado por el compañero, pero parece que ha llegado el caso. Estamos en un asesinato en primer grado, ante un testimonio de esta naturaleza, que es lanzado de sorpresa a esta parte, sin figurar en la lista de los testigos, y sin que el acusado tenga oportunidad de defenderse de ella a ver si es o no verdad. Someto el caso a su señoría y someto otra vez mi moción de suspensión del juicio.

"(J.)—La corte tuvo oportunidad de estudiar este asunto y ha llegado a la conclusión de que no tiene motivos para modificar su resolución de que procede oir la declaración de este testigo.

"(Def.)—Lo que someto a la corte es que mi posición como abogado, no estando este testigo en la lista del Gran Jurado, no habiéndosele dado oportunidad a la defensa para conocer y rebatir esta prueba, lo coloca en una indefensión que la corte debe apreciar, y debe hacérsela apreciar al jurado, para que sepa que este testigo no está en dicha lista de testigos, y en estas condiciones y con esas manifestaciones, empiezo a examinar al testigo."

Con respecto a recusaciones motivadas de la transcripción aparece lo que sigue:

"Durante el acto de las recusaciones la defensa recusó motivadamente al señor Guillermo Morales, por entender que un jurado que sostenga que tiene una opinión formada y necesite evidencia para cambiarla, debe ser recusado. La corte denegó dicha recusación pues a preguntas de la corte manifestó dicho jurado no tener una opinión arraigada, de tal naturaleza que le impidiera actuar serena e imparcialmente, cumpliendo su deber y dando un veredicto de acuerdo con la prueba practicada. La defensa tomó excepción de la resolución de la corte.

"La misma cuestión fué levantada en cuanto al jurado Sr. Enrique Ubarri Casal, por entender la defensa que dicho jurado había estado presente en el juicio seguido contra Carlos Arrocho, habiendo oído las declaraciones del médico y del padre de la niña, y necesitar evidencia para cambiar su opinión. La corte negó dicha recusación, pues a preguntas que le hizo sobre si el hecho de haber oído esas declaraciones ha causado en su ánimo alguna impresión de prejuicios, de algún modo que le impidiera dar un veredicto a su favor, si la prueba fuere insuficiente, manifestó dicho jurado negativamente. La defensa tomó excepción de la resolución de la corte.

"La misma cuestión fué levantada en cuanto al jurado Sr. Víctor Rengel, por entender la defensa que había estado presente en

el día de ayer, oyendo ciertas declaraciones de los testigos, y creer que esto haya podido influir en su ánimo de algún modo. La corte denegó dicha recusación por haber manifestado dicho jurado el no tener opinión formada del caso, y poder traer un veredicto justo e imparcial de acuerdo con la prueba practicada. La defensa tomó excepción de la resolución de la corte. ·

"En cuanto al jurado Sr. Lavandero, la defensa lo recusó motivadamente por el fundamento de que tiene opinión formada y necesita prueba para cambiarla. La corte denegó dicha recusación por manifestar dicho jurado que esa opinión no pesaba en su ánimo. La defensa tomó excepción."

Se practicó la prueba y el acusado fué también declarado culpable por el Jurado y condenado luego a muerte por la corte.

Ambas sentencias fueron apeladas señalándose varios errores de los cuales sólo examinaremos los que se refieren a la suspensión del juicio y a las recusaciones motivadas de los jurados porque son ellos los que demuestran que no se reconoció a los acusados el derecho al juicio justo e imparcial que la ley les garantiza.

Discutiendo el primer error cita el fiscal el caso de *El Pueblo* v. *Fredericks,* 106 Cal. 554 (39 P. 944).

Los hechos del caso pueden resumirse así: En la mañana del 23 de marzo de 1894, durante las horas de oficina, William M. Fredericks, al intentar realizar un robo en un banco de ahorros de la ciudad de San Francisco, dió muerte al cajero. Fredericks escapó, pero fué capturado horas después. En marzo 28 se hizo el examen preliminar, en marzo 29 se presentó la acusación y en marzo 30 se celebró la lectura, concediéndose al acusado hasta el 2 de abril siguiente para contestar la acusación. En dicha fecha, habiendo el acusado rehusado contestar, se le anotó la alegación de no culpable y el juicio fué señalado para y celebrado el día 5 de abril no obstante las reiteradas peticiones de suspensión del acusado.

Y sostiene el fiscal que dicho caso es más fuerte que los que estamos considerando y que eso no obstante la Corte

Suprema de California decidió "que el mero hecho de fijar el día del juicio tan cerca al día de la lectura de la acusación, no establece *ipso facto* suficiente motivo para la revocación de la sentencia."

Es verdad que la Corte Suprema llegó a la anterior resolución, pero véase el lenguaje usado por la misma:

"Aunque el período de tiempo, a saber, tres días intermedios entre la lectura de la acusación y el comienzo del juicio del acusado puede ser un tiempo amplio en algunos países europeos para traer a juicio, condenar y decapitar media docena de criminales, no obstante en este país, donde los tribunales judiciales están organizados bajo un sistema diferente y donde las personas acusadas de crímenes tienen más derechos bajo nuestra ley, creemos que al acusado pudo bien habérsele concedido diez, veinte o quizás treinta días para preparar su defensa. En vista de la enormidad de la acusación que pesa sobre él; en vista del clamor público que le perseguía; en vista de su pobreza y de su falta de amistades, el Gobierno bien pudo haberse prestado a concederle tal suspensión para que tuviese oportunidad de preparar su defensa, no importa lo débil que ésta hubiese sido. El Gobierno nada hubiese perdido con ésto y se hubiese hecho justicia siempre. Aunque el Gobierno debe administrar justicia a los infractores de la ley con no tardía mano, no obstante es inferior a su dignidad el actuar con demasiada festinación a instancias del clamor público o por otra causa."

Que la política seguida por la Corte Suprema de California al limitarse a censurar sin revocar no ha dado el resultado apetecido, puede verse por lo menos en este caso en que se invoca la decisión para escudar un procedimiento igual al censurado.

En cuanto a que el caso sea más fuerte, diremos que lo es si se toma en consideración que allí se fijaron tres días y aquí se concedieron seis y siete, pero las circunstancias del crimen convierten estos casos en más fuertes que el de California, ya que el de California se cometió en un banco, en horas de oficina, en presencia de testigos.

En el capítulo que trata de los derechos del acusado, resumiendo la jurisprudencia dice Ruling Case Law:

"La justicia exige y es además la regla general que a una persona acusada de un delito debe dársele un tiempo razonable para preparar su defensa; pues si la regla fuera otra, el derecho del acusado a un juicio justo e imparcial sería a menudo destruído. Desde luego la regla es la misma cuando la representación del acusado es nombrada por la corte, y ello sin obligación de hacer demostración alguna en cuanto a testigos y a lo que se espera probar con ellos.   Qué cantidad de tiempo es razonable es generalmente una cuestión que descansa en la discreción de la corte, y el ejercicio de su discreción es revisable en apelación.''   8 R.C.L. 67.

El texto de Ruling Case Law se apoya en muchas decisiones.   Nos limitaremos a citar en extenso la de la Corte Suprema de Lousiana, en el caso de *State* v. *Collins* 104 La. 629, (29 So. 180) 81 A. S. R. 150.   El juez Blanchard, hablando por la corte, se expresó así:

"Aunque el celo desplegado por nuestro ilustrado compañero de la corte de distrito en la pronta vindicación y cumplimiento de la ley es digno de elogio, sin embargo estamos obligados a sostener que en este caso él llevó las cosas demasiado lejos.   Y no estamos de acuerdo con su resolución denegando la suspensión solicitada.

"Este era un caso de pena capital.   La vida de un ser humano estaba en la balanza y por el momento estaba protegida por la presunción de inocencia.   Gran deliberación, una ausencia absoluta de precipitación, debió haber caracterizado cada actuación de la corte hasta el momento de la condena.   'La ley camina con pie de plomo, pero da con mano de hierro', es una máxima preñada de significado obvio.   En este caso echó a un lado el 'pie de plomo' pero dió con mano de hierro.

"No es improbable que la anterior tentativa de linchamiento y la aprensión de los funcionarios de la ley respecto a una segunda tentativa en caso de demora en traer al acusado a juicio, puedan haber influído en la situación en contra de él y ocasionado la indebida premura que es motivo de queja.

"Pero a esto no puede dársele el alcance de justificar una separación de la regla de calmosa deliberación.   El derecho 'a estar asistido por abogado' es uno conferido por la constitución misma.   Un tiempo razonable para preparar su defensa debió haber sido concedido a los abogados que a requerimiento de la corte habían asumido su responsabilidad.   Sólo en esta forma podía su asistencia ser efectiva.   Su labor era una que habían de desempeñar sin recompensa.

Ellos tenían otros deberes que cumplir con relación a la corte, na-
cidos de su contratación para otros casos en que cobrarían honora-
rios profesionales. No era de esperarse que echaran esos casos a un
lado y se dedicaran exclusivamente a la preparación de la defensa
del caso presente en que no recibirían remuneración. Nos parece
que no se concedió tiempo suficiente para ambas cosas.

"En el caso de State v. Simpson, 38 La. Ann. 23, que fué un
caso por asesinato, la acusación fué radicada en la corte el 5 de oc-
tubre. El acusado fué llamado y se le nombró abogado el mismo
día, fijándose para el juicio el día 9 del mismo mes. En ese día la
defensa pidió una suspensión por el fundamento de que había sido
nombrado abogado sólo cuatro días antes y no había tenido tiempo
de prepararse para llevar el caso por estar ocupado con multitud
de otros asuntos. Manifestó que él creía que había una defensa
válida y que se le debía dar un tiempo razonable para prepararla.
Hizo una declaración jurada por él mismo sobre las alegaciones de
su moción. La suspensión fué negada. Esta corte en apelación
sostuvo que ello fué un error, y revocó el veredicto y la sentencia.
Al hacerlo así dijimos lo siguiente: 'Considerando que el delito de
que se trata es el de asesinato, que la acusación había sido radicada
en el mismo término de la corte, que el abogado nombrado para la
defensa no residía en la parroquia en que la corte celebraba sus
sesiones, y no tenía suficiente oportunidad para conferenciar con los
testigos, y que la defensa a hacerse exigía larga busca de autorida-
des sobre una cuestión intrincada y de gran dificultad, creemos que
el juez *a quo* erró al desestimar la moción.'

"Más adelante en su opinión, la corte, hablando de la garantía
constitucional en favor de personas acusadas de delito, de estar
asistidas por abogado, dijo: 'Sería un derecho estéril si al abogado
no se le concediera un término razonable para prepararse para la
defensa, tiempo para investigar los hechos y examinar la ley apli-
cable al caso.' Y concluyendo su opinión la corte dijo: 'Una re-
visión de todos los autos nos convence que el proceso estuvo .carac-
terizado por indebida prisa, apenas compatible con la garantía de
un juicio justo e imparcial.'

"Es cierto que en ese caso fué el abogado mismo quien juró so-
bre lo inadecuado del tiempo de que había dispuesto para preparar
la defensa. Aquí la moción de suspensión por el mismo fundamento
fué preparada y firmada por el abogado nombrádole al prisionero,
pero fué éste quien hizo la declaración jurada sobre la verdad de
sus alegaciones. El abogado debió haber hecho esa declaración ju-
rada y fué erróneo el no haberlo hecho, pero dentro de las circuns-

tancias del caso estamos obligados a sostener que no es un error suficientemente grave para justificar el que sostengamos el veredicto por ese solo fundamento.

"En el caso de State v. Brooks, 39 La. Ann. 241, 1 South. 421, el homicidio fué cometido en septiembre 29. Se presentó la acusación y se llamó al acusado el día 4 de octubre siguiente, y se señaló para su juicio el día 9, cinco días después. Los arreglos finales para proveerle un abogado para su defensa no fueron hechos hasta el día antes al señalado para el juicio. La moción de suspensión fué hecha por el fundamento de falta de tiempo para preparar la defensa. Fué negada. Esta corte sostuvo ·que ello fué un error, insistiendo grandemente en el hecho de que aparecía que el acusado fué convicto al noveno día después de la comisión del delito de que fué acusado, y que la solicitud de suspensión fué hecha al llamarse el caso por primera vez a juicio.

"En el caso de State v. Deschamps, 41 La. Ann. 1051, 7 South. 133, esta corte revisó la cuestión largamente e hizo acopio de las autoridades sobre la materia. La solicitud de suspensión en ese caso fué hecha bajo el juramento del abogado nombrádole al acusado. Había sido nombrado sólo cuarenta y ocho horas antes de ser llamado el caso para juicio. No había tenido tiempo suficiente de preparar la defensa. Suplicó a la benevolencia de la corte que le concediera tiempo para prepararla. Le fué negado. En apelación ante esta corte sostuvimos que era error sujeto a revocación: Véanse también State v. Boyd, 37 La. Ann. 781 (1 So. 450); State v. Horn, 34 La. Ann. 100.

"Estas autoridades establecen la regla general de *que al abogado nombrado para defender a personas acusadas de delito debe concedérsele un tiempo razonable para prepararse para el juicio, y ello sin estar obligado a hacer demostración alguna en cuanto a testigos o lo que se espera probar con sus declaraciones.* También sostienen que *lo que sea un término razonable no debe dejarse enteramente a la discreción del juez sino que es revisable en esta corte.*

"Bajo las circunstancias de este caso los dos o tres días que transcurrieron entre el nombramiento del abogado y el día del juicio no fueron tiempo suficiente para prepararse para el juicio en un caso de asesinato. El caso debió haber. sido suspendido por lo menos para la segunda semana del término.

"Por las razones consignadas se ordena, adjudica y decreta que el veredicto y la sentencia sean anulados y revocados, y que la causa sea devuelta a la corte *a quo* para que se proceda de acuerdo con

la ley." *State* v. *Collins,* (104 La. 629, 29 So. 180) 81 Am. St. Rep. 152-4. Las itálicas son nuestras.

Pero hay más en estos casos. Dejamos transcrito lo que los autos muestran sobre las recusaciones motivadas. No se ha incluído como debiera haberse hecho, una copia literal de las preguntas y respuestas. Pero lo transcrito ha sido suficiente para llevar la firme convicción a uno de los jueces que constituyen la mayoría, el Juez Asociado Sr. Hutchison, de que se ha violado la ley sobre la materia y para hacer dudar a los otros en el mismo sentido, circunstancia que sumada a la indefensión en que se dejó a los acusados al no accederse a la suspensión del juicio, inclinó definitivamente la balanza por la revocación de la sentencia y la concesión de un nuevo juicio.

Se apoya el fiscal para sostener que la corte no erró al negar las recusaciones motivadas de que se trata, en el artículo 227, inciso 7, del Código de Enjuiciamiento Criminal (Comp. p. 1029, sec. 6259) y en los casos de *People* v. *Roy Wolff,* 182 Cal. 728; *People* v. *Edwards,* 163 Cal. 752; *People* v. *Brown,* 148 Cal. 743, (84 P. 204); *People* v. *Walter Warner,* 147 Cal. 546, y *People* v. *Murphy,* 146 Cal. 502, (80 P. 709).

Los hechos de los casos citados han sido examinados y revelan situaciones distintas a las surgidas en estos que consideramos. La ley exige que la opinión que la persona haya formado se funde en rumores públicos, manifestaciones de la prensa o en la notoriedad del caso y que el tribunal quede convencido, previa la declaración que bajo juramento o en otra forma preste, que dicha persona está en aptitud de actuar con entera imparcialidad y rectitud en el asunto que a ella se haya de someter.

Y aquí algunos de los jurados recusados en el segundo caso formaron su opinión oyendo declaraciones prestadas en el primero y de la manera como se consignan los hechos es dudoso que todos los jurados recusados en uno y otro juicio

entrarán a juzgar a los acusados en aquel estado de ánimo y con aquella serenidad de juicio que la tradición, la ley y la jurisprudencia exigen de consuno.

Parece propio transcribir lo que dice Bishop sobre esta materia. Su opinión es muy valiosa para la debida interpretación del artículo 227, inciso 7, de nuestro Código de Enjuiciamiento Criminal:

"Esta es la más importante de las causas de incapacidad del presente capítulo, la más delicada, y la que más a menudo se considera. Depende de la ley no escrita de Inglaterra tal como regía cuando este país fué colonizado, de nuestras garantías constitucionales sobre el juicio por jurado, y de los algo diversos estatutos y decisiones de los varios Estados, todo en conjunto. Y el resultado es que aunque los principios generales son armónicos, los detalles de doctrina varían algo en nuestros Estados.

"La regla del derecho común tal como existía cuando nuestro país fué colonizado, expresada en el lenguaje de Hawkins, es que está incapacitado aquel jurado que 'ha declarado de antemano su opinión de que la persona es culpable, o será ejecutada, o algo parecido.'

"Entre nosotros, como esta doctrina constituía una parte de nuestro derecho común original, nuestras constituciones que garantizan el juicio por jurado hacen irrevocable la sustancia de este principio ya por las legislaturas o por los tribunales.

"La razón de esta doctrina, tal como fué expresada por Hawkins, aparece de las anteriores explicaciones de este subtítulo. El jurado debe ser indiferente y no tener prejuicio. Y no está en tales condiciones quien ya ha formado y declarado su opinión.

"Varias de las opiniones judiciales y algo de la legislación de nuestros varios Estados, aparece sucintamente de la nota.

"Las diferencias que muestra la nota se derivan en parte de origen estatutorio y en parte de origen judicial. Es de ayuda tanto en la interpretación de los estatutos como en la orientación hacia el sendero judicial, considerar que: Los jurados son hombres sujetos a las imperfecciones que son comunes a la humanidad. Una absoluta libertad de prejuicio, perfecta capacidad mental, un entendimiento purificado que va siempre junto con la prueba y nunca de otro modo: esto y todo lo demás que constituye el armazón mental y moral de un sér perfecto, no tienen existencia en nuestra tierra. La regla del derecho común y nuestras constituciones deben ser in-

terprétadas a la luz de estos hechos; ellos son su marco. Por lo tanto la incapacidad por causa de prejuicio, para que pueda prevalecer, debe estar regulada por una norma fijada por la sabiduría practicada. Tratar de formar un jurado imposible, compuesto de hombres perfectos, sería simplemente impedir la marcha de las ruedas de la justicia. Además, la opinión es una cosa variable. Sólo una pequeña parte de las opiniones de los mejores hombres se deriva del raciocinio y la investigación. Comenzamos la vida aceptando como verdad, como cosa indubitable, lo que otros nos dicen; y llegamos al fin de la vida casi en la misma forma. En efecto, por necesidad, tan imperfecto es el hombre que tiene que proceder así, o parar sus actividades; pues es imposible para un hombre investigar las cosas lo bastante rápidamente para ver siempre antes de actuar. Leemos nuestros periódicos matutinos, y aunque sabemos que su contenido es una mezcla de·verdad y errores, prácticamente aceptamos como verdad todo aquello que no tenemos alguna razón especial para rechazar. Si leemos que un crimen ha sido cometido por el Sr. Jones, formamos en seguida lo que pudiéramos llamar la 'opinión' de que el Sr. Jones lo cometió. Si después vemos su culpabilidad negada, nuestras mentes retornan a su equilibrio. Y para el derecho, que es una cosa práctica, ningún jurado tiene razonablemente una opinión que lo incapacite, a menos que se· *adhiera* a ella después de venir la negativa. La opinión que en tal forma no se *adhiere* no debe llamarse tal opinión dentro de la ley que estamos considerando. En cuanto a rumores, el que así forma una opinión *adherente* derivada de ellos, está, en justa doctrina, más palpablemente incapacitado para actuar como jurado en el caso que aquel cuya opinión se deriva de la prueba; pues ningún hombre justo y capaz actúa en tal forma. Y aún más, por opinión derivada de rumores, que una gran parte de nuestras decisiones sostienen no incapacita, a menudo quizás se quiere significar la asunción hipotética de que el acusado es culpable si los hechos comprendidos en el rumor son ciertos; y esta clase de prejuicio hipotético, aunque no es digno de elogio, probablemente no debería excluir al jurado que para los fines del juicio descartará el prejuicio. Sin embargo, nadie. que después de la negativa y de establecida la controversia se adhiera a su anterior opinión de que el acusado es culpable, cualquiera que sea su fundamento, debe formar parte del jurado que ha de juzgarlo. Ni la creencia de tal jurado de que puede rendir un veredicto imparcial, basado solamente en la prueba, debe variar su caso. Un hombre puede creer una mentira de sí mismo, así como de cualquier otra cosa; y no es parte de la natu-

raleza humana que quien ha formado una opinión concreta, especialmente derivada de rumores, juzgue la cuestión de nuevo e imparcialmente, lo mismo que quien no la ha formado. Y este razonamiento se aplica tanto a la opinión no expresada como a la expresada.'' II Bishop's New Criminal Procedure, 700–14.

Tales fueron, expuestos a grandes rasgos, los motivos que tuvo la mayoría de los jueces de esta corte para dictar las sentencias de 2 de agosto.

Existe un clamor justificado en muchas ocasiones contra la dilación en la administración de la justicia en nuestro país, tanto en las causas criminales como en los pleitos civiles. Esta corte se ha visto obligada a decretar el sobreseimiento de muchas acusaciones por no haberse sometido a juicio a los acusados dentro del término de ciento veinte días. En manera alguna debe interpretarse la actitud que hemos asumido, en el sentido de que favorecemos esa dilación. Al contrario, insistimos e insistiremos siempre en que los jueces y fiscales cumplan con sus deberes hasta el límite y en que se imprima la mayor rapidez a los procedimientos. Pero esa rapidez debe ser compatible con los derechos envueltos. La grandeza de nuestras instituciones consiste en que no sólo en la ley sino en la práctica se reconoce su derecho al más humilde.

A los acusados en estos casos se les nombró abogados de oficio. La corte impuso sobre esos abogados un deber extraordinario. Ellos aceptaron la responsabilidad, pero pidieron tiempo, insistentemente, para cumplirla. ¿A qué tal precipitación? ¿Qué hubiera perdido la causa de la justicia con inquirir de los abogados el tiempo que necesitaban y si era razonable concedérselo? El ambiente de serenidad y firmeza peculiar de las cortes no debe alterarse por repugnante que sea el crimen que se imputa a un acusado, por excitada que se encuentre la opinión pública. La presunción de inocencia acompaña al acusado. La corte debe abrirse para él libre de prejuicios, en todos sentidos. No son sólo los derechos del acusado los que se ventilan: son los derechos de

la sociedad entera. Un mal precedente, una violación consentida, pasada por alto, tendería a anular el fruto de siglos enteros de lucha. La maquinaria del gobierno es poderosa, todas las facilidades están a su alcance. Cuando esa maquinaria se enfrenta con un individuo acusado de un crimen, es el deber de la corte velar porque el combate judicial se entable, conduzca y decida en lo posible sin presión, sin ventajas, sin desigualdades, con absoluta justicia para ambas partes.

No podemos dejar de llamar la atención hacia la conducta del fiscal al comenzar el segundo juicio en relación con la declaración del testigo Arturo Rodríguez. Cuando un testigo no es examinado por el Gran Jurado, no es necesario que su nombre se incluya en la acusación, pero la disposición del legislador mandando que se incluyan todos los testigos conocidos en el momento de formularla está indicando cuál es el espíritu de la ley, y la indicada actuación del fiscal en este caso fué claramente contraria a ese espíritu.

Si los acusados son culpables, si ellos son los autores del crimen terrible que se les imputa, que sean condenados y sufran la última pena si ella procediere, pero que se les juzgue con todas las garantías que por fortuna existen en nuestro país no como una mera ficción en la ley, sino como una realidad en la práctica.

*Revocadas las sentencias apeladas y ordenado un nuevo juicio.*

El Juez Asociado Sr. Wolf disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Como indica la corte, existe la presunción de inocencia en favor de todo acusado. El artículo 236 del Código de Enjuiciamiento Criminal prescribe lo siguiente:

"Art. 236.—En todo proceso criminal, se considera inocente al acusado mientras no se pruebe lo contrario, y en caso de existir duda razonable o fundada acerca de su culpabilidad, se le absolverá."

El cuerpo de hombres que bajo nuestro sistema está en la obligación de decir cuando ha sido destruída la presunción de inocencia es el jurado. El jurado es el único juez de este hecho. Aunque una corte puede determinar si existe prueba suficiente para presentar a un jurado y puede dejar sin efecto el veredicto de un jurado, sin embargo es siempre el jurado quien debe responder de los hechos de un caso. Cuando ese organismo ha dictaminado contra un acusado, la presunción de inocencia queda enteramente destruída. Surge entonces otra presunción en el caso. Es una presunción de culpabilidad. 16 Corpus Juris, 536; 17 Corpus Juris, 213.

Cuando un caso llega a las puertas de una corte de apelación entra con la presunción de culpabilidad en contra del acusado. Debe hacerse énfasis en el hecho de que una corte de apelación realmente no juzga el caso. En Puerto Rico es la corte de distrito la que lo hace. La batalla de una persona por conservar su vida o su libertad debe darse allí. Por tanto la ley ha dado sabiamente al acusado su presunción de inocencia en oposición a las fuerzas que un proceso desplegará contra él. Por consiguiente el acusado de una parte y la sociedad organizada de la otra esperan ansiosamente el veredicto del jurado. Se ha dicha que toda la ciencia del gobierno está en reunir doce hombres buenos y rectos en el sitio del jurado. Después que un jurado ha rendido su veredicto y la corte de distrito pronunciado su sentencia el deber que incumbe a la corte de apelación no es juzgar el caso sino resolver si la corte inferior ha cometido errores. Y para los fines de una apelación en Puerto Rico un abuso de discreción debe también considerarse como error.

El error, no obstante, debe probarse. Los abusos de discreción deben demostrarse. Ninguna corte tiene derecho a revocar un caso meramente por tener una duda. Para que una corte revoque debe estar convencida de haberse come-

tido error.   El siguiente párrafo aparece en la opinión de
la mayoría:

"Pero hay más en estos casos.   Dejamos transcrito lo que los
autos muestran sobre las recusaciones motivadas.   No se ha incluído
como debiera haberse hecho, una copia literal de las preguntas y res-
puestas.   Pero lo transcrito ha sido suficiente para llevar la firme
convicción a uno de los jueces que constituyen la mayoría, el Juez
Asociado Sr. Hutchison, de que se ha violado la ley sobre la materia,
y para hacer dudar a los otros en el mismo sentido, circunstancia
que sumada a la indefensión en que se dejó a los acusados al no
accederse a la suspensión del juicio, inclinó definitivamente la ba-
lanza por la revocación de la sentencia y la concesión de un nuevo
juicio."

Lo que se infiere de esta parte de la opinión es que toda
la corte no hubiera votado a favor de una revocación de no
haber existido estas dudas.   Sin embargo, antes de discutir
los alegados errores por los cuales este caso ha sido revo-
cado deseo tratar o ampliar algunas consideraciones gene-
rales.

En el curso de un juicio se presentan muchas cuestiones
al juez que envuelven el uso de discreción.   En el sentido
genérico la palabra "discreción" se emplea cuando el juez
resuelve sobre una cuestión legal o admite o excluye prueba.
Existen cosas, sin embargo, como suspensiones, el orden de
los testigos, la duración del interrogatorio, el alcance del
examen de repreguntas, y otras cuestiones en las cuales no
está envuelta ninguna resolución de una cuestión legal que
estrictamente así pueda llamarse.   Dentro de esta esfera el
juez sentenciador tiene gran latitud y su sentencia sólo será
revocada por un abuso de discreción.   Se ha reconocido
desde hace mucho tiempo que la frase "abuso de discre-
ción" no es una designación adecuada sino que tiene un sig-
nificado definido en nuestro procedimiento.   Significa, sin
embargo, en un juicio criminal tal uso de discreción que re-
sultaría en una injusticia para el acusado.   En apelación tal

injusticia, lo mismo que un error legal, debe aparecer claramente.

La parte que alega error debe claramente probarlo. *Bear Lake Irrigation Co.* v. *Garland,* 164 U. S. 24; *Reynolds* v. *United States,* 98 U. S. 145, (25 L. ed. 244); *Spies* v. *Illinois,* 123 U. S. 179, (8 Sup. Ct. Rep. 21, 31 L. ed. 80) 16 R. C. L. 289, notas 4 y 5; *People* v. *Maughs,* 8 Cal. App. 112; *People* v. *Ruef,* 114 Pac. 61, 4 Corpus Juris 733, 798, 811.

"En el caso de Reynolds v. United States, 98 U. S. 145, 25 L. ed. 244, en el cual la Corte Suprema de los Estados Unidos rehusó modificar la resolución de la corte sentenciadora al declarar sin lugar una recusación a los jurados se dijo lo siguiente: 'La teoría de la ley es que un jurado que ha formado una opinión no puede ser imparcial. Cada opinión que pueda tener no tiene necesariamente ese efecto. En estos días de empresas periodísticas y educación universal todo caso de interés público se trae casi como cuestión de necesidad a la atención de todas las personas inteligentes en la vecindad, y apenas si puede encontrarse alguien entre aquellos mejores preparados para ser jurados que no haya leído o sabido de él, y que no tenga alguna impresión u opinión, en cuanto a sus méritos. Es claro, por tanto, que en el juicio de la cuestión de hecho promovida por una recusación por tal causa, la corte prácticamente se verá obligada a resolver si la naturaleza y fuerza de la opinión formada son tales que en derecho necesariamente levanten la presunción de parcialidad. La cuestión así presentada es una de hecho y de derecho, y que ha de juzgarse, en tanto respecta a los hechos en cuestión, como cualquier otra de esa naturaleza, por la prueba. La resolución de la corte sentenciadora sobre esa cuestión no debe anularse por una corte de revisión a no ser que el error sea manifiesto. No deben aplicarse reglas que sean menos rigurosas por la corte de revisión en tal caso que aquellas que rigen en la consideración de mociones para nuevo juicio porque el veredicto es contrario a la prueba. Debe hacerse constar claramente que por virtud de la prueba la corte debe haber declarado que el jurado había formado tal opinión que según la ley no podía ser considerada imparcial. El caso debe ser uno que resulte manifiesto que la ley nada dejó "a la conciencia o discreción" de la corte.' Citado en parte en el caso de Spies v. Illinois, 123 U. S. 131, 31 L. ed. 80, 8 Sup. Ct. Rep. 21, 22, también en Callot v. United States, 31 C. C. A. 44, 58 U. S. App. 243, 87 Fed. 446; Leigh v. Territory, 10 Ariz. 129, 85 Pac. 948, y

en Hardin v. State, 60 Ark. 53, 48 S. W. 904.'' *Scribner* v. *State,* 35 L.R.A. (N.S.) 1015, que también puede ser examinado sobre la cuestión general de opiniones obtenidas de periódicos.

Una cita interesante de *Reynolds* v. *United States, supra,* puede hallarse en el caso de *Jarvis* v. *State,* 34 So. Rep. 1031, a saber:

"Este principio ha sido enunciado por nuestra misma corte en este lenguaje: 'La suficiencia de la causa de recusación la determina la corte sentenciadora, y las investigaciones se encaminan a la conciencia del jurado bajo juramento. A él se le examina con respecto a sus condiciones, a presencia del juez que ve la forma en que contesta a las preguntas, y el escudriñamiento de su conciencia que a menudo indica más claramente su desinterés o parcialidad que las meras palabras usadas. La corte de revisión, por tanto, debe ejercitar cautela y la resolución de la corte sentenciadora no debe ser anulada a menos que aparezca afirmativamente que en las contestaciones del jurado tomadas en conjunto él tenía una opinión formada que haría parcial su veredicto.' Long v. State, supra. Véase también, 1 Thompson on Trials, par. 118, p. 126, y nota 5. Aplicando estos principios nos vemos obligados a declarar que la incompetencia de Cook no está demostrada en los autos."

Si los autos en este caso se examinan se verá que la corte al negarse a admitir recusaciones motivadas se expresó así:

"Durante el acto de las recusaciones la defensa recusó motivadamente al señor Manuel Colón por entender que dicho Sr. había formado opinión del caso. La corte denegó dicha recusación pues a preguntas de la corte dicho jurado manifestó no tener formada una opinión arraigada y firme del caso y de poder rendir un veredicto justo e imparcial de acuerdo con la prueba presentada."

Esta declaración era típica de todas las recusaciones motivadas como puede verse en la opinión de la mayoría. ¿Demuestra esto parcialidad en el jurado? ¿Demuestra esto que era imposible para alguno de los jurados en particular recusados en este caso poder dictar un veredicto imparcial? La contestación parece evidente.

El juez de la corte inferior como indican los autos exa-

minó a los jurados y declaró que tenían las debidas condiciones para poder dictar un veredicto imparcial. Si hubo alguna duda acerca de dicha imparcialidad el apelante estaba en el deber de demostrar a esta corte que el jurado en realidad tenía prejuicios. La indicación de esta corte, si algo quiere decir, en el párrafo citado es que el gobierno tenía la obligación de haber elevado a esta corte todo el récord. No existe tal deber por parte del gobierno. El deber de demostrar error incumbe al apelante. Si había algo en el resto de los autos no transcrito, el apelante debió haber hecho constar qué era lo que el jurado dijo que demostraba un prejuicio imborrable o alguna otra cosa que lo incapacitara. Si se hubiera demostrado que el jurado se encontraba en tal condición mental al entrar al sitio de los jurados que existía una presunción de hecho que no pudiera él emitir un veredicto justo e imparcial, eso debió haber hecho que el juez sentenciador lo eximiera, pero al aceptarlo el juez ejercitaba una discreción judicial. Llama la atención en este caso que el fiscal de esta corte ofreciera en cuanto a uno de los jurados todos los hechos referentes al interrogatorio del jurado. No teníamos derecho a considerar esta cita toda vez que no era parte propiamente de los autos. Esta cita tendía a demostrar que había aún menos objeción al jurado que la que pudiera esperarse. No me fundo en manera alguna en esta cita como no sea para apoyar la presunción que siempre existe de que si la resolución del juez al ejercitar su discreción es dudosa en absoluto, el apelante tiene el deber de demostrar un abuso de discreción. Cualquier silencio milita en favor de la actuación del juez. Para revocar, el récord debía haber excluído la posibilidad que aparecía en la cita.

El artículo 227 de nuestro Código de Enjuiciamiento Criminal prescribe los fundamentos por los cuales puede hacerse una recusación por parcialidad implícita a un jurado y el párrafo 7 de ese artículo prescribe lo siguiente:

"Art. 227.—. . . .

"7. No será motivo de incapacidad para actuar como miembro del jurado el hecho de que éste haya formado o expresado su opinión acerca del asunto o causa que haya de someterse a la deliberación de aquél, si dicha opinión se funda en rumores públicos, manifestaciones de la prensa o en la notoriedad del caso, siempre que a juicio del tribunal, previa la declaración que bajo juramento o en otra forma preste, está dicho individuo en aptitud, no obstante dicha opinión, de actuar con entera imparcialidad y rectitud en el asunto que a él haya de someterse. La recusación puede ser verbal, pero debe anotarse en el libro de actas del tribunal.''

Este precepto parece haber sido copiado literalmente de California y una disposición semejante prevalece en un número de estados y territorios. En el caso de *Turner* v. *State,* 4 Okla. Crim., 111 Pac. 988, se resolvió que un estatuto similar no cambiaba en modo alguno las condiciones esenciales que deben poseer los jurados y meramente proporcionaba un medio de prueba por la cual habría de resolverse sobre tales condiciones. Lo que entiendo que esto significa y creo que las autoridades me sostienen es que tal estatuto no cambia la regla general como ha sido establecida por la Corte Suprema de los Estados Unidos acerca de cuándo ha de considerarse parcial o nó a un jurado. El caso de *People* v. *Riggins,* 159 Cal. 118, (112 P. 862) revisa algunas de las autoridades de California, a saber:

"En el caso de People v. Wells, 100 Cal. 229 (34 Pac. 718), un jurado tenía una opinión sobre los méritos del caso y se fundaba en lo que se le había dicho por aquellos que parecían conocer los hechos que habían sido referidos a él, pero él manifestó que a pesar de esa opinión podía y actuaría honrada e imparcialmente en el caso. La corte resolvió que era incompetente, diciendo: 'En la ley común un jurado que entraba en el sitio de los jurados con una opinión acerca de la culpabilidad o inocencia del acusado estaba *ipso facto* incapacitado para actuar en el caso, pero la sección 1076 del Código Penal de este estado establece una innovación a este principio que es una excepción a la regla de la ley común. Pero para que un jurado incapacitado en la ley común por haber formado anteriormente opinión sobre la culpabilidad o inocencia del acusado

pueda quedar comprendido en las disposiciones del estatuto, debe aparecer afirmativamente a la corte en vista de la prueba ante ella que tal opinión se formó por rumores públicos o manifestaciones de los periódicos diarios o por la notoriedad común; y debe además aparecer a la corte por la declaración del jurado bajo juramento que no obstante tal opinión él podrá y actuará honrada e imparcialmente en el asunto que le haya de ser sometido.' Pero la corte pasó a declarar que cuando la opinión se funda en manifestaciones de otras fuentes que no sean las arriba indicadas, 'ese hecho por sí es una incapacidad de acuerdo con la ley, y lo es aún cuando el jurado declare a la corte bajo juramento que a pesar de tal opinión él puede actuar y actuará honrada e imparcialmente sobre el asunto que ha de sometérsele. En el caso de People v. Miller, 125 Cal. 46 (57 Pac. 771), dice la corte: 'El jurado fué al sitio de los jurados con la opinión de que el acusado era culpable. Tal condición de la mente del jurado era una absoluta incapacidad en la ley común. Bajo el Código Penal de este estado sólo una excepción declara el artículo 1076. El jurado estaba claramente incapacitado a menos que estuviera dentro de las disposiciones de la sección citada.' Esto se dijo en vista del hecho posterior de que el jurado había declarado que podía actuar y actuaría honrada e imparcialmente y obedecería las instrucciones de la corte. En el caso de People v. Helm, 152 Cal. 536 (93 Pac. 101), la corte al discutir esta cuestión se expresó así: 'Si no se hace constar que la opinión del jurado se funda enteramente en una u otra de las tres fuentes de información arriba citadas; si se demuestra que su creencia tiene su origen en cualquier otra fuente que no sea una de las tres enumeradas, él queda inmediatamente tan enteramente incapacitado bajo nuestro código como hubiera quedado en la ley común.' ''

Pasa entonces la corte a decir en el caso de Riggins lo siguiente:

''El principio establecido por estas decisiones es que la abilidad del jurado para prescindir de la parcialidad actual que se ha demostrado existe en su mente es enteramente inmaterial, menos en el caso comprendido en la excepción especificada en el artículo 1076. Siendo necesaria la concurrencia de ambas condiciones para la excepción la omisión en hacer que el jurado quede comprendido en ella es tan clara cuando la opinión que constituye la parcialidad o prejuicio no es una opinión sobre el asunto o causa que ha de someterse como cuando aunque es sobre ese asunto o causa no se funda única-

mente en una o más de las fuentes de información especificadas en la cláusula que constituye la excepción.   Si no se cumple con ambas condiciones el jurado está incapacitado y ninguna declaración hecha por el jurado de que él puede dejar a un lado el prejuicio y actuar honrada e imparcialmente hará desaparecer la incapacidad. Lombardi v. California St. Ry. Co., 124 Cal. 316 (57 Pac. 66); Naylor v. Metropolitan St. Ry. Co., 66 Kan. 407 (71 Pac. 835); Coughlin v. People, 144 Ill. 165, 176 (33 N.E. 1, 19 L.R.A. 57).''

De modo que la opinión formada por un jurado que le incapacitaría irremediablemente debe ser una formada fuera de las excepciones enumeradas en el artículo 227 del Código de Enjuiciamiento Criminal, *supra*.   Sostengo, sin embargo, que en vista de los principios generales en favor de la corrección de la actuación de la corte inferior, que cuando los jurados recusados no fueron dispensados la presunción sería que la clase de opinión que todos o uno de ellos hubiera formado se debía a los informes de los periódicos, al rumor corriente u otra cosa semejante.   Nada demostraría esto mejor que el caso de *People* v. *Riggins,* donde la parcialidad actual del jurado se debía al conocimiento que tenía del juicio del acusado en un caso anterior y diferente y donde la impresión general había sido en California que él fué injustamente absuelto.

En el caso de *Riggins* la corte dijo que al hacerse el examen de un jurado sobre sus condiciones (*voir dire*), la cuestión de si tuvo o nó verdadera parcialidad era una de hecho para ser resuelta por la corte sentenciadora por la prueba ante ella; que cuando la prueba era contradictoria sobre esa cuestión como cuando el jurado daba contestaciones contradictorias, la decisión de la corte sentenciadora sobre la misma, como en cualquier otro caso de prueba contradictoria era concluyente para las cortes de apelación, citándose autoridades.   Dado el silencio de los autos en este caso debió haberse llegado indiscutiblemente a la conclusión en vista de las manifestaciones de la corte que tal cuestión había surgido y se resolvió en contra de la recusación.   El

caso de *People* v. *López,* 159 Cal. 11, es otro caso *in pari
materia.* La corte dijo:

"Las manifestaciones de aquellos que han sido llamados para
cumplir deberes de jurados en este caso parecen enteramente típicas
de aquéllas dadas durante la selección de un jurado en cualquier
caso respecto al cual ha habido amplio comentario en los periódicos
diarios. Casi toda persona llamada a formar jurado tenía una opi-
nión de la culpabilidad del acusado, fundada en lo que había leído
y algunas de ellas manifestaron que tal opinión requeriría prueba
para borrarse. Cuando, sin embargo, se le sometía a la prueba de
su competencia para juzgar el caso por la prueba producida en el
juicio y sin estar influídos por algunas otras consideraciones, cada
una contestó que podía actuar y actuaría de ser elegida honrada e
imparcialmente. Era el deber de la corte sentenciadora resolver el
verdadero estado mental de cada miembro del panel que había sido
interrogado en cuanto a sus condiciones para servir de jurado. Con
frecuencia existe conflicto en diferentes partes de la declaración pres-
tada durante el examen preliminar (voir dire) debido no siempre
a la falta de sinceridad por parte de la persona examinada sino a
su mal entendimiento de las preguntas hechas y de los deberes de
un jurado hasta que tales deberes han sido explicados por la corte.
Cuando ocurre tal conflicto la corte sentenciadora debe resolver de
ser posible cuál de las contestaciones revela más fuertemente el es-
tado mental del propuesto jurado. En otras palabras, las cuestio-
nes generalmente presentadas son aquellas de hecho y no de derecho.
People v. Ryan, 152 Cal. 364, (92 Pac. 856); People v. Ochoa, 142
Cal. 274, (75 Pac. 847); People v. Flannelly, 128 Cal. 86, (60 Pac.
670); People v. Fredericks, 106 Cal. 559, (39 Pac. 944)."

Toda la corte en este caso, a virtud de la seguridad del
abogado expresada en el acto de la vista, aceptó que las re-
cusaciones perentorias del acusado quedaron agotadas. In-
discutiblemente que este hecho debe aparecer de los autos.
No estoy levantando ninguna cuestión en particular sobre
esta omisión como no sea para demostrar por qué estoy dis-
cutiendo las recusaciones motivadas hasta tal punto, toda
vez que si las recusaciones no habían quedado agotadas, no
habría fundamento de error. Hubo varias otras cosas que
los autos no mostraban.

Las partes transcritas de los interrogatorios a los jurados no indicaban que si dichos jurados tenían una opinión equivalente a un prejuicio dicha opinión era en favor o en contra del acusado. Este punto en particular lo menciono más porque esta corte está aparentemente indicando que cuando un jurado dice que ha formado una opinión que puede ser recusado por el acusado. La regla es que el jurado debe estar predispuesto contra la persona que lo recusa. De modo que el interrogatorio del jurado como ha sido descrito no demostraba ningún prejuicio en contra del acusado sino meramente que había formado una opinión en el caso. Por tanto era imperativo que los autos en apelación debieron haber sido más específicos.

California sostiene en el caso de *Riggins, supra,* que no es bastante que se recuse a un jurado por causa sino que debe especificarse la naturaleza de la recusación. Asimismo se sostiene en *People* v. *Cochran,* 61 Cal. 549. Nada como esto se hizo al parecer en este caso.

Mi objeto en singularizar estos defectos en los autos se debe a que creo que son una revelación parcial de la verdad real en el caso. En otras palabras, todos estos defectos en los autos indican casi inevitablemente el hecho de que los abogados no tenían verdaderas objeciones que hacer a los jurados propuestos y sólo estaban cumpliendo con su deber según lo entendían hacia los acusados al formular las objeciones. Si alguno de estos jurados en realidad de verdad hubiera tenido verdadero prejuicio, los distinguidos abogados de los acusados hubieran encontrado un medio para hacerlo constar en los autos.

Otra cosa se nota a través de casi todos los casos en los que se discute la formación de un jurado, o sea, que generalmente debe acreditarse de algún modo que el jurado como quedó definitivamente constituído en realidad tenía parcialidad o prejuicio; que algún jurado entró a formar parte teniendo prejuicio contra el acusado. Nada sabemos ni se nos ha acreditado respecto a que alguno de los jurados re-

·cusados formó ciertamente parte del jurado que juzgó a
·Clemente o a Arrocho.

El fundamento principal de revocación en este caso, sin
·embargo, era que el acusado fué apresuradamente llevado a
juicio, que su abogado no tuvo debido tiempo para preparar
·su defensa. Me parece que nadie dudará de que después de
·trabada la contienda litigiosa y no habiéndose fijado nin-
·gún término por el estatuto, que el momento para señalar
·el día del juicio se deja a la sana discreción de la corte sen-
tenciadora.

El artículo 182 del Código de Enjuiciamiento Criminal
prescribe que: "Después de presentada su alegación, tiene
el acusado derecho a cinco días por lo menos para preparar
su defensa.

Cualquier término concedido por la corte sentenciadora
fuera de los cinco días es, por tanto, cuestión puramente de
·discreción, y un abuso de esta discreción debe quedar clara-
mente demostrado. Los abogados de los acusados tanto en
·el caso de Clemente como el de Arrocho nó expusieron razo-
nes especiales para que el término fuera ampliado como no
sea el hecho de que había numerosos testigos, que el tiempo
·de que los abogados habían podido disponer fué corto y que
sus investigaciones encontraron hostilidad. En ningún mo-
mento que no sea al hacer esta afirmación general, trataron
·los acusados de demostrar que la naturaleza de la defensa
·era de tal carácter que se necesitaba más tiempo.

Esta corte cita varios casos de Louisiana. En el princi-
·pal aparecía que la corte hubiera estado satisfecha si el jui-
cio se hubiera pospuesto hasta la segunda semana del tér-
·mino. No he comprobado si los términos de la corte de
·Louisiana empiezan en lunes o martes, pero la clara infe-
rencia de la decisión de la corte es que si el caso hubiera
sido señalado para el lunes de la siguiente semana la Corte
·Suprema de Louisiana no hubiera revocado por abuso de
·discreción. En otras palabras, de lunes a martes hay siete
·días—precisamente lo que sucede en este caso. Por su-

puesto, si el término en Louisiana comienza en martes, el
posponer hasta el lunes siguiente sólo hubiera sido seis días.
De modo que la posposición de siete días que tuvo lugar en
este caso aparentemente hubiera satisfecho a la Corte Su-
prema de Louisiana.  Esta corte también justifica su actua-
ción apoyándose en lo que dijo la Corte Suprema de Louis-
iana más que en lo que hizo.  La Corte Suprema de Cali-
fornia, aunque censurando la prisa en ese caso, se negó a
revocar por el fundamento de que un caso era juzgado den-
tro de cuatro días.  En otras palabras, a pesar de lo que
dijo resultaría que la Corte Suprema de California estaba
consciente o inconcientemente siguiendo la regla, a saber,.
que antes de que deba ser revocada la actuación de una
corte sentenciadora la corte de apelación debe estar conven-
cida de que hubo abuso de discreción y que los autos deben
mostrar esto.

Después de emitido el veredicto, los acusados solicitaron
un nuevo juicio y en esta moción de nuevo juicio aunque
uno de los fundamentos para dejar sin efecto el veredicto
fué que los acusados no habían tenido amplio tiempo para
preparar su defensa, sin embargo aquí los abogados vuelven
a dejar de demostrar las razones particulares por las cuales
no fué suficiente el término de siete días para celebrar el
caso.  Para esa fecha después que todos los testigos habían
sido presentados los abogados debieron haber estado ente-
rados suficientemente de la naturaleza de la defensa para
indicar a la corte algunas de las razones por las cuales no
habían tenido tiempo antes los abogados.  Uno de los fun-
damentos alegados fué que los abogados en vista de sus ocu-
paciones no tuvieron tiempo.  Cuando la corte designa a un
abogado para defender a un hombre sometido a juicio de
pena capital, dicho abogado generalmente abandonará cual-
quiera otra cosa que tenga que hacer a fin de defender a su
cliente, y esto es lo que puede decirse que la ley espera que
haga.  Esto es generalmente lo que un abogado joven desig-

nado para el caso hará, y si un abogado de más experiencia no necesita tanto tiempo es debido a que su mayor experiencia le permitirá llegar a conclusiones más rápidamente. Seguramente que el hecho de que distinguidos abogados fueron en este caso designados para la defensa no es razón para darles más tiempo que el que se hubiera dado a un abogado más joven.   Ellos necesitan menos tiempo, si acaso.

Las precedentes consideraciones podrían llevar a uno a pensar si el juez disidente no está insistiendo en una interpretación técnica de la ley.   Un profano inteligente tal vez se sorprendería por qué estas reglas de ley deben desempeñar un papel si los acusados en realidad de verdad no tuvieron tiempo para preparar su defensa.   ¿De qué modo entonces puede una corte de apelación juzgar si ha habido premura indebida en la celebración del juicio de un caso?   No tenemos ningún derecho a decir que ha habido tal indebida premura porque el abogado de un apelante lo diga.   En contra de tal afirmación tenemos la opinión imparcial del juez que conoció del caso y que resolvió, después de la debida consideración, que no había ninguna razón para posponer el juicio.   Digo "imparcial" toda vez que no existe la más leve indicación en los autos o en los alegatos de que el juez que celebró el caso estuviera predispuesto, aún cuando una de las presunciones más fuerte de la ley no existiera a su favor.   El juez de distrito que preside un juicio es en realidad la persona que en una sociedad organizada ocupa el puesto más responsable.   Su discreción se está invocando casi a cada momento.   La ley presume fuertemente, como he indicado, que sus resoluciones y sentencias son correctas hasta que se demuestre lo contrario.   Por tanto, cualquiera que sea la garantía o protesta nada ayudará a un apelante a no ser que los hechos lo sostengan.

Cuando un abogado alega que una regla de ley es técnica probablemente quiere decir que la regla es adecuada en la mayoría de los casos, pero que está real o aparente-

mente produciendo una injusticia en el caso particular. Des-
provisto de toda la terminología de la ley, del ropaje habi-
tual de la ley, para mí la escueta proposición es que para
poder revocar la sentencia la corte debió haber estado con-
vencida de que Arrocho y Clemente en realidad de verdad
no tuvieron tiempo suficiente para preparar su defensa. Que
sería mejor como regla dar a los acusados algún tiempo más,
no afectaría el resultado. ¿Por qué, en verdad, como no
sea para eludir la posible crítica, debe un juez sentenciador
posponer un caso por más tiempo del que es necesario para
preparar una defensa? Cuando la corte en marzo 11, 1924,
señaló el caso para el 18, si para el 16, por ejemplo, los abo-
gados de los acusados hubieran venido a la corte y hasta
sin hacer una manifestación completa hubieran asegurado a
la corte que estaban investigando cierto aspecto del asunto
o indagando sobre la cordura de los acusados o el carácter
o la veracidad de alguno de los testigos que declararon ante
el gran jurado, yo personalmente no tengo ninguna duda
de que el juez sentenciador o casi cualquier juez, especial-
mente si él había designado a los abogados, hubiera conce-
dido más tiempo.

Cuando una corte establece la práctica que ha de seguirse,
práctica en este caso fijada y no requerida por el estatuto,
puede uno decir que generalmente es una práctica que ha de
seguirse en casos importantes. Sin embargo, puede haber
excepciones, y, como se indica generalmente, el tiempo que
ha de concederse en exceso a los cinco días es cosa que in-
cumbe a la sana discreción de la corte sentenciadora. Po-
dría surgir un caso en que un acusado a quien se imputa un
delito pudiera asiduamente solicitar una vindicación y desear
un juicio inmediato, y la corte puede por supuesto, de con-
formidad con el estatuto, celebrarle un juicio en cinco días
a partir de su alegación de estar convencida que el proceso
podía quedar listo en ese tiempo. Asimismo cuando el go-
bierno en interés de la justicia pública insiste en un juicio

rápido, la única cuestión es si el acusado puede estar listo
en el tiempo especificado, en este caso siete días.   Decir que
generalmente debe concederse más tiempo debido a la prác-
tica general es, a mi juicio, insistir en un tecnicismo, o sea
que generalmente se concede más tiempo.   No hay ninguna
razón para conceder más tiempo si el acusado puede estar
listo en siete días.   No existe ninguna regla de ley de que
deban concederse más de siete días.   El estatuto dice ''cinco
días,'' y en California el tiempo es ahora dos días.   De
modo que cualquier tiempo fuera de ese período queda pura-
mente a la discreción de la corte.   Un uso indebido de esa
discreción debe entonces tener lugar.   Digo ''tener lugar'' a
sabiendas.   Aunque la regla es que un abuso de discreción
debe aparecer, puedo decir que dada la naturaleza del delito
y de la prueba como fué realmente sometida no veo nada
en la naturaleza del caso o en tal evidencia que no hubiera
podido ser investigado dentro de siete días y estoy conven-
cido de que tal investigación pudo haber tenido lugar sin
consumir todo el tiempo de los abogados.   De modo que in-
sistir en más tiempo aquí no sólo es insistir en un tecnicismo
como lo he definido, sino inferir de la práctica ordinaria un
tecnicismo no autorizado por la ley.

En el caso de *Clemente* también se hizo una objeción y
excepción a la presentación de un testigo en el juicio que no
había sido incluído en la lista del gran jurado.   Aquí tam-
bién la corte pudo haber evitado toda cuestión concediendo
a los acusados, de ser necesario, algunas horas para refutar
la declaración del testigo, pero este asunto cae también den-
tro de la regla que se ha tratado de demostrar en esta opi-
nión, o sea, que el abuso de discreción debe probarse, y no
se probó en este caso.

*No estando convencido de que haya habido algún error,*
*me veo obligado a disentir.*