512

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FLO-
RENCIO ARCHEVAL TORRUELLAS, c/p DON PRUDE, acusado
y apelante.

Número 15298.

*Sometido:* 2 de febrero de 1953.  *Resuelto:* 27 de marzo de 1953.

*Héctor Lugo Bougal,* abogado del apelante; *Hon. Subsecretario de Justicia Juan B. Fernández Badillo* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

Florencio Archeval Torruellas, conocido por "Don Prude", fué acusado ante el extinto Tribunal de Distrito de Puerto Rico, Sección de Ponce, por el delito de asesinato en primer grado consistente en que el día 2 de abril de 1950 con malicia y premeditación dió muerte ilegal, haciendo uso de un punzón, al ser humano Andrés Rodríguez Rivera. El jurado que entendió en el caso trajo un veredicto de culpabilidad del delito imputado, siendo sentenciado el 5 de julio de 1951 a la pena de reclusión perpetua. Contra dicha sentencia apeló el acusado imputando al tribunal a quo la comisión de dos errores, a saber:

"1. Que erró el tribunal inferior al permitir al Ministerio Fiscal impugnar la veracidad del acusado cuando declaró como testigo, mediante evidencia de la comisión por éste de delitos *'misdemeanors.'*

"2. Que erró el tribunal inferior al declarar sin lugar la moción de *'mistrial'* formulada por la defensa, luego que el fiscal en su informe de rectificación al jurado argumentó un caso anterior seguido contra el mismo acusado y por el cual éste había sido anteriormente convicto."

El primer error se basa en el hecho de que estando declarando el acusado como testigo a su favor, el fiscal, en su turno de repregunta trajo a colación, con objeción de la defensa, la convicción anterior del acusado por los delitos de asesinato en segundo grado, allanamiento de morada, acometimiento y agresión grave y portación de armas. Al final del examen directo del acusado su abogado le preguntó, "¿Entonces no es cierto que haya ido a provocarlos?", contestando, "No, señor, nada de lo que han dicho aquí es cierto. Yo se lo pruebo y el veredicto primordial lo sabe que es mentira. ¿Cómo voy a decir malas palabras?"—"Yo no soy malcriado.

Mi padre lo primero que me enseñó fué que respetara al otro hombre y al ser mujer. La prueba está en que tengo setenta años; ahí donde está el Cuartel de la Policía, ahí nací yo y de ahí para acá, a los doce años me trasladé a Capitanejos, y mi cuerpo como dejo dicho, no podrá ser abusador, porque mi cuerpo me acusaba." Entonces el fiscal procedió a repreguntarle en la siguiente forma:

"Fiscal Cintrón:

"¿Don Prudencio, usted dice que su padre le enseñó a respetar?

"Testigo:

"A respetar, sí, señor.

"¿Y usted siguió siempre esa conducta?

"Siempre seguí esa senda.

"¿Usted dice que estuvo en el presidio anteriormente?

"Y puedo explicarle la situación.

"Yo no quiero que me explique. ¿Por qué delito fué Don Prude?

"Por una acusación ilegal.

"¿Por qué delito?

"Porque dijeron que yo había tirado un tiro siendo mentira, porque las cuatro balas aparecieron ahí encima y la otra la tenía uno que era contrabandista.

"¿Cuánto cumplió?

"Veinte años.

"¿Por qué delito?

"Por asesinato injusto.

"¿Cuándo murió el papá suyo?

"Hace como treinta años que murió.

"¿Usted tiene ahora qué edad?

"Setenta años.

"¿A base de esos consejos de su papá, usted respeta la morada ajena?

"Sí, señor, sí.

"¿A pesar de esos consejos, usted no fué a la cárcel por allanamiento de morada?

"¿Fué en el mil novecientos veintiocho?

"Eso fué otra acusación ilegal.

"Lcdo. Lugo:

"Para oponernos por el mismo fundamento anterior.

"Juez:

"Con lugar la pregunta. El acusado ha dicho que a él le enseñaron a tener moral y respeto y el Fiscal está impugnando eso.

"Lcdo. Lugo:

"Nuestra excepción.

"Fiscal Cintrón:

"¿Usted ingresó en la cárcel el diez de septiembre de 1928 por allanamiento de morada, usted recuerda eso?

"Testigo:

"Eso vuelvo y le repito que es una cosa ilegal.

"Que si recuerda.

"Tres meses me echaron.

"¿Allá para abril, el 17 de agosto, el 21 de abril del treintiséis, usted cumplió o ingresó por acometimiento y agresión grave y portar armas?

"No lo niego.

"¿En el treintiséis fué que a usted lo acusaron de asesinato en primer grado?

"Sí.

"¿Y después se lo rebajó el Jurado a segundo grado?

"Sí, tres veces he sido convicto."

La regla general es al efecto de que en un proceso criminal el acusado no puede ser juzgado nada más que por el delito imputado en la acusación y que, por lo tanto, no es admisible prueba sobre otros delitos cometidos por el acusado. *Pueblo* v. *Rodríguez*, 66 D.P.R. 317. Por excepción, evidencia sobre otros delitos es admisible cuando el delito anterior es un hecho material para establecer la comisión del crimen imputado, o cuando el mismo forma parte del *res gestae* o cuando se presente dicha prueba para demostrar motivo, intención, premeditación, malicia o un plan común, o cuando ambos delitos formen parte de una misma transacción. *Pueblo* v. *Román*, 70 D.P.R. 50; *Pueblo* v. *Rodríguez*, supra; *Pueblo* v. *Pérez*, 47 D.P.R. 765.

Ninguna de las circunstancias mencionadas existían aquí para admitir esa prueba. Sin embargo dicha prueba sí era admisible por otras razones. Veamos por qué. Una vez

que el acusado se sienta a declarar, se convierte en un testigo como cualquier otro y está sujeto a las mismas reglas y procedimientos en cuanto a la pregunta y repregunta que cualquier testigo, *Pueblo* v. *Dumas*, 51 D.P.R. 844; *Pueblo* v. *Morales*, 42 D.P.R. 595; *Pueblo* v. *González*, 35 D.P.R. 675; *Pueblo* v. *Román*, 18 D.P.R. 219 y conforme al artículo 155 de la Ley de Evidencia (artículo 517 del Código de Enjuiciamiento Civil), (¹) el fiscal podía repreguntar al acusado respecto a cualesquiera hechos mencionados en el interrogatorio, o relacionados con los mismos. Al declarar el acusado en el examen directo que el no era malcriado, que su padre lo primero que le enseñó fué que respetara al otro hombre y a la mujer, y que su cuerpo no podía ser abusador, abrió las puertas al fiscal para examinarlo sobre todos los hechos que estuvieran relacionados con lo declarado por el acusado. Siendo ello así, no puede haber objeción legal a que en un caso como el de autos, el fiscal traiga a la consideración del jurado, mediante el contrainterrogatorio del acusado, hechos que revelen que su conducta pasada es contraria e inconsistente con lo que él había declarado. Sostener lo contrario sería permitir que un acusado se sentara a declarar y llevara al conocimiento del jurado hechos completamente falsos en cuanto a su pasado sin que el ministerio público pudiese, en la repregunta, demostrar tal falsedad. En *People* v. *Gallagher*, 35 Pac. 80 (Cal., 1893), se dice que cualquier repregunta que tienda a lograr del acusado declaraciones al efecto de que su conducta anterior ha sido inconsistente con lo por él declarado en su examen directo, logrando así desacreditar su declaración directa, está dentro de los límites propios del contrainterrogatorio. En *People* v. *Buckley*, 143 Cal. 375, 77 Pac. 169 se dijo: "Si un acusado, en su examen directo, no entra en cuestiones relacionadas con su historia pasada, el fiscal no puede comenzar inquisición alguna a ese

---

(¹) Dicho artículo dispone lo siguiente:

"Art. 155—La parte contraria podrá repreguntar al testigo respecto a cualesquiera hechos mencionados en el intertrogatorio directo, o relacionados con los mismos."

respecto, excepto en cuanto al único caso de previa convicción por un *felony;* pero si él, voluntariamente, abre la puerta a su pasado y declara en cuanto al mismo con el propósito de demostrar su buen carácter, él no puede quejarse de cualquier contrainterrogatorio que esté limitado en su alcance a los términos del examen directo." En *People* v. *Fong Ching*, 78 Cal. 169, 20 Pac. 396, se preguntó al acusado si él había sido arrestado anteriormente. La corte sostuvo que no hubo error al permitir la pregunta, diciendo: "El contrainterrogatorio del acusado fué ciertamente muy amplio, mas como él declaró en el directo en cuanto a su nacimiento, parentesco, educación y negocio, no podemos decir que ello no abriera la puerta lo suficientemente para justificar lo que siguió en el contrainterrogatorio." Véase también *People* v. *Westek*, 190 P.2d 9 (Cal.), donde, como aquí se trataba de una declaración espontánea del testigo y no a preguntas de su defensa; *People* v. *Lombard*, 131 Cal. App. 525, 21 P.2d 955 y los artículos 21 y 34 de nuestra Ley de Evidencia (artículos 383 y 396 del Código de Enjuiciamiento Civil). En *Pueblo* v. *Dumas*, supra, el fiscal preguntó al acusado si era verdad que él había afilado el cuchillo [el mismo que el acusado había admitido haber tomado de un mostrador], a lo que contestó, "Yo no ando con un arma así." Entonces el fiscal le preguntó si él no había sido condenado por portar armas y si no había cumplido una condena. La corte inferior, ante la objeción de la defensa, sostuvo que la pregunta era pertinente no para probar la mala reputación del acusado, sino para impugnar su veracidad. Resolvimos en apelación que no se cometió error y dijimos: "El fiscal estuvo justificado al impugnar la veracidad del acusado en la forma en que lo hizo. El acusado no puede ser obligado a declarar, pero cuando hace uso de su derecho a ocupar la silla testifical, desde ese momento está sujeto a todas las reglas de evidencia al igual que cualquiera otro testigo". En *Pueblo* v. *Pou*, 55 D.P.R. 304, el acusado había declarado en el examen directo que él nunca había sido procesado. En su turno de repregunta el fiscal le preguntó si él

recordaba que para diciembre 23 de 1930 había cumplido 30 días en la cárcel de distrito por acometimiento y agresión grave. Resolvimos que no se cometió error alguno al permitirse al fiscal repreguntar al testigo sobre una materia que había sido objeto del examen directo.

■■ En el segundo error se imputa al fiscal conducta impropia y perjudicial al acusado. Se basa dicho error en que en su informe de rectificación al jurado el fiscal dijo que el acusado mató a Rodríguez Rivera en la misma forma que había matado anteriormente a Soldevila. Sin embargo, como los taquígrafos de la corte a quo no transcribieron los informes de las partes al jurado, ni están, por tanto, ante nos, desconocemos cuál era el argumento que exponía el fiscal cuando hizo el aludido comentario. Aunque el juez que presidía el juicio manifestó que lo que intentaba el fiscal al hacer ese comentario era enfatizar la existencia del elemento de premeditación, tal criterio del juez, no es concluyente, si del argumento del fiscal, considerado en su totalidad, o por lo menos en cuanto al incidente que discutimos, surge base suficiente para sostener que tal comentario no es impropio. Por ejemplo, el fiscal podía hacer alusión al delito anterior cometido por el acusado, si su propósito era el de atacar su veracidad como testigo. Ello es así porque el hecho de la convicción anterior por delito *felony*, ya estaba ante el jurado y el fiscal podía referirse a tal convicción con el propósito que ya indicamos. Véanse, *People* v. *Brain*, 61 P.2d 806; *Clark* v *State*, 161 S.W.2d 1072; *Newman* v. *State*, 187 S.W.2d 559. Por eso, a falta de una transcripción de todo el incidente, carecemos de base para resolver que se cometiera el segundo error.

*No habiéndose cometido los errores señalados, debe confirmarse la sentencia apelada.*