EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARIO ESQUILÍN PARÍS, acusado y apelante.

*Número:* CR-67-163     *Resuelto:* 28 de junio de 1968

*Luis E. Gandía Arguelles,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General,* e *Israel Arana Arana, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Como a las diez de la noche del 30 de agosto de 1966, una señora esperaba un autobús en la Parada 12 de Miramar. Un joven la invitó a abordar un automóvil color claro que él conducía. Aceptó que la llevara hasta la Parada 22. Al llegar allí no detuvo la marcha y continuó hasta Hato Rey. La señora trató de tirarse del automóvil, pero la velocidad lo impidió. Llegaron a un sitio solitario, por el sector de la urbanización industrial Las Tres Monjitas. Allí detuvo el vehículo. La amenazó para lograr que tuviera relaciones íntimas. Ella no accedía pero al final le dijo que lo haría pero que le permitiera salir del vehículo para hacer una necesidad. Al bajar cuando ella creyó que él no la estaba mirando trató de correr pidiendo auxilio, pero fue alcanzada. La volvió a amenazar y al fin accedió. Terminado el acto pidió que la llevara a donde pudiera conseguir transportación. La dejó en Hato Rey cerca de un parque donde había un semáforo. Al bajarse, la luz del semáforo cambió a roja y tuvo la oportunidad de fijarse en el número de la tablilla y lo apuntó. De allí fue al cuartel de la policía de Ayuda Juvenil. El guardia de retén llamó al agente encargado de las investigaciones. Cuando éste llegó le contó todo lo que había pasado y le suministró el número de la tablilla. Se investigó en los registros correspondientes y de esa forma se llegó al aquí apelante. Llevado al cuartel la perjudicada lo identificó.

La defensa del acusado consistió en una coartada. En ese día y en los momentos en que estaba ocurriendo lo que relata la perjudicada, él visitaba en unión con su esposa, a la madre de ésta.

Para establecer su defensa el acusado declara. En el contrainterrogatorio el fiscal insiste una y otra vez si cuando fue llevado al cuartel para la investigación le informó a la detective dónde se encontraba el día de los hechos. Además recalcó que durante la vista preliminar no levantó la defensa de coartada. Veamos la repregunta:

"P. Y al Juez, a quien se le sometió el caso para ver si, para determinar si había causa probable para acusarlo a usted, usted no le dijo eso que le dijo a los señores del jurado que ocurrió y que ha dicho en el día de hoy?

R. No, señor.

P. No le dijo, mire, el martes pasado, señor Juez, el 30 de agosto de 1966, que dice esta señora, que yo estaba, no pude estar ni hacerle eso a ella porque en esa fecha y hora yo estaba en casa de fulano de tal, para que los mande a buscar.

R. Simplemente, no se lo dije.

P. Dígame, en relación a estos hechos hubo una vista preliminar?

R. Sí, señor.

P. Declaró eso que usted dice pasó?

R. No lo declaré; perdóneme, si le puedo hacer una pregunta?"

. . . . . . . .

"P. Y usted no hace nada para defenderse de la alegación que hace la señora de que usted la había violado el 30 de agosto; usted no hace nada para defenderse?

R. Sí, hice?

P. No dice que no le dijo nada al Juez?

R. Claro, yo le dije, esa es la primera vez que la veo.

P. Le dijo, esa es la primera vez que la veo?

R. Sí, señor.

P. Y no es como usted dijo ahorita, que no le había dicho nada al Juez; usted le dijo algo al Juez pero no le dijo que ese día 30 de agosto usted estaba en casa de fulano de tal visitando a pesar de que según su esposa le había recordado ese dato a usted?

R. Sí, señor.

P. Le dijo al Juez, no conozco esta señora pero no le dijo, además, déjeme decirle Vuestro Honor que yo estaba en casa de

fulano de tal el día 30 de agosto y tráigalo aquí a ver si es verdad.

R. . . . . . . . .

P. Y porqué no le dijo esa razón que usted no le había dicho nada al juez por que la investigación era suficiente y sin embargo no creyó que la investigación era suficiente cuando; no le dijo que no conocía a esa señora?

R. Yo consideraba que lo único que me restaba decirle era, señor Juez, yo, legalmente no conozco esta señora."

La línea del contrainterrogatorio antes transcrito equivale a un comentario al silencio del acusado. En efecto se está comentando el que hubiera permanecido callado durante la investigación y al celebrarse la vista preliminar.

El juez denegó una solicitud de instrucciones especiales que hizo la defensa. A la pág. 389 de la transcripción aparecen las siguientes manifestaciones de la defensa:

"Para que en récord conste la solicitud, vamos a vaciarla para el récord. El acusado por conducto de su abogado respetuosamente solicita la transmisión de las siguientes instrucciones especiales a los señores del jurado: 'Que el acusado no tiene que presentar versión de defensa, alguna en la vista preliminar. Que en el curso de la investigación un acusado o presunto acusado no tiene que exponer versión alguna de defensa.' Excepcionamos la negativa del Tribunal al transmitir estas instrucciones por entender que no, solamente del interrogatorio del señor Fiscal al acusado como testigo, se trajo a colación el hecho que el acusado no expuso su teoría de coartada en el curso de la investigación de los hechos ni la expuso tampoco en la vista preliminar; y no, solamente esto surgió en el curso del interrogatorio del señor Fiscal al acusado sino que fue utilizado por el señor Fiscal con gran énfasis en su informe original y de rectificación a los señores del jurado."

Por las manifestaciones del abogado, que no son contradichas ni por el fiscal ni por el juez, surge que en el informe comentó la actitud del acusado al no presentar teoría de defensa alguna cuando estaba bajo arresto y en la vista preliminar. Además de constituir un comentario al silencio del

acusado el fiscal trató de desacreditar la defensa de coartada, precisamente con el silencio que el acusado mantuvo durante la vista preliminar. Cf. *Chapman* v. *California*, 386 U.S. 18 (1967).

Y cuando posiblemente al juez se le ofrece la oportunidad de corregir ese error mediante las instrucciones solicitadas por la defensa, se niega a transmitirlas. La Constitución es terminante cuando en la Sec. 11 de la Carta de Derechos dispone que "el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra". Y en *Pueblo* v. *Álvarez Trinidad*, 85 D.P.R. 593 (1962) expresamos que esa disposición constitucional protege a la persona desde el momento del arresto. Ver además, *Miranda* v. *Arizona*, 384 U.S. 436 (1966); *United States* v. *McKinney*, 379 F.2d 259 (6th Cir. 1967); *United States* v. *Mullings*, 364 F.2d 173 (2d Cir. 1966). El error cometido conlleva la revocación de la sentencia.

*Procede revocar la sentencia apelada y devolver el caso para un nuevo juicio.*

El Juez Presidente Señor Negrón Fernández no intervino. Los Jueces Asociados Señores Blanco Lugo y Ramírez Bages concurren en el resultado.