EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARIO ESQUILÍN PARÍS, acusado y apelante.

*Número*: CR-67-163        *Resuelto*: 9 de febrero de 1970

*Rafael A. Rivera Cruz, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

(EN RECONSIDERACIÓN)

Ha solicitado el Procurador General la reconsideración de la sentencia recaída en el presente caso que revocó la dictada por el Tribunal Superior. Revocamos fundándonos en que el fiscal había hecho referencia al silencio del acusado contrario a lo dispuesto en la Sec. 11 de la Carta de Derechos de nuestra Constitución.

Sostiene el Estado que erramos al aplicar el derecho a los hechos. Exponemos de nuevo los hechos en cuanto son pertinentes a la aplicación del citado precepto constitucional.

"Como a las diez de la noche del 30 de agosto de 1966, una señora esperaba un autobús en la Parada 12 de Miramar. Un joven la invitó a abordar un automóvil color claro que él conducía. Aceptó que la llevara hasta la Parada 22. Al llegar allí no detuvo la marcha y continuó hasta Hato Rey. La señora trató de tirarse del automóvil, pero la velocidad lo impidió. Llegaron a un sitio solitario, por el sector de la urbanización industrial Las Tres Monjitas. Allí detuvo el vehículo. La amenazó para lograr que tuviera relaciones íntimas. Ella no accedía pero al final le dijo que lo haría pero que le permitiera salir del vehículo para hacer una necesidad. Al bajar cuando ella creyó que él no la estaba mirando trató de correr pidiendo auxilio, pero fue alcanzada. La volvió a amenazar y al fin accedió. Terminado el acto pidió que la llevara a donde pudiera conseguir transportación. La dejó en Hato Rey cerca de un parque donde había un semáforo. Al bajarse, la luz del semáforo cambió a roja y tuvo la oportunidad de fijarse en el número de la tablilla y lo apuntó." *Pueblo* v. *Esquilín París*, 96 D.P.R. 415 (1968). La perjudicada suministró a la policía el número de la tablilla que según ella, exhibía el automóvil que conducía la persona que alega la violó. Según el testimonio del apelante, el día del juicio un agente acudió a la casa del acusado y le invitó a ir al cuartel en relación con una investigación que se estaba llevando a cabo con motivo de la querella interpuesta. El apelante informó al agente que lo acompañaría para que le tomaran la declaración "porque no sabía nada de lo que se trataba. . . ." No fueron al cuartel en esa ocasión. Al otro día fue. Una mujer detective le explicó en el cuartel que una señora se quejaba de un ultraje y "lo único que le argumenté fue, bueno, señora, realmente no sé nada de eso". Continúa declarando que después, llegó la perjudicada y el fiscal se expresa así: "Entonces, viene la señora, doña Fidia [la perjudicada] y dice, ése es el que me violó y lo señala a usted?" El apelante explica "Estoy hablando de espaldas con la señora María

Ramírez [la detective] y llega la señora donde está el Señor Juez, y dijo, por la espalda, ése es el hombre, ese mismo es el hombre y yo me cambié y dije, señora usted me conoce a mí y dijo, no, sí usted sabe todo y yo le dije todo sobre qué?" Entonces el fiscal inquirió si la mujer detective le preguntó dónde había estado el día de los hechos. El acusado contesta que no y el fiscal le pregunta que si él no se lo informó. El fiscal insistió para hacer resaltar que el acusado en ningún momento durante la investigación ni durante la vista preliminar había levantado la defensa de coartada. Copiamos a continuación el contrainterrogatorio del fiscal:

"P—Entonces, dígame, la mujer detective no le preguntó dónde estaba usted ese día 30 de agosto de 1966?

R—Nada de eso.

P—Le informó usted, mire el día 30 de agosto del 66, a la hora que dice esta señora, que me dice usted, que ella dice que yo la violé en esa fecha y hora yo estaba en la casa de fulano de tal haciendo una visita.

R—No podía indicarle exactamente ese día porque para mejor decirle, usted me pregunta el día 23, dónde estaba y no le puedo decir porque legalmente, no me recuerdo.

P—Pero si se lo dijo durante la investigación después de eso no lo llevaron a Fiscalía?

R—Pero no me preguntaron nada.

P—Aunque no se lo preguntaran usted no dijo, mire, doña María, ahora recuerdo, haciendo memoria, ese día yo estaba visitando a fulano de tal en horas de la noche.

R—A mí no me hicieron preguntas de esa índole.

P—Que si lo dijo sin que se lo preguntaran?

R—Simplemente, yo le dije no sabía nada de eso.

P—A la inversa, no lo dijo hasta hoy?

R—Sí, señor.

P—Y dice no se recordaba en ese momento?

R—Sí, señor.

P—Debo entender no se recordó durante todo el transcurso hasta que el caso fue sometido al Juez?

R—Bueno. . .

P—La pregunta fue si se recordó durante la investigación, hasta que se sometió?

R—Como esta es una cosa de trayectoria.

HON. JUEZ:

Conteste la pregunta, si se recordó o no durante la investigación?

R—No, señor.

P—Y usted pensó sobre eso?

R—Estuve pensando todo el día, estuve pensando el mismo asunto.

P—Y al Juez, a quien se le sometió el caso para ver si, para determinar si había causa probable para acusarlo a usted, usted no le dijo eso que le dijo a los señores del jurado que ocurrió y que ha dicho en el día de hoy?

R—No, señor.

P—No le dijo, mire, el martes pasado, señor Juez, el 30 de agosto de 1966, que dice esta señora, que yo estaba, no pude estar ni hacerle eso a ella porque en esa fecha y ahora yo estaba en casa de fulano de tal, para que los mande a buscar.

R—Simplemente, no se lo dije.

P—Dígame, en relación a estos hechos hubo una vista preliminar?

R—Sí, señor.

P—Declaró eso que usted dice pasó?

R—No lo declaré, perdóneme, si le puedo hacer una pregunta?"

Es cuando el fiscal termina su contrainterrogatorio a la pág. 348 de la transcripción de evidencia y obviamente para aclarar que el acusado no había prestado testimonio en la vista preliminar, que la defensa en el redirecto le pregunta si había declarado en dicha vista. La defensa con la pregunta aclaró que el acusado no había declarado en la vista preliminar. Es por eso que luego le pide instrucciones al juez al efecto de que un acusado no tiene que exponer su defensa de coartada ni durante la investigación ni en la vista preliminar. Instrucciones que el juez denegó.

¿Qué inconsistencia existe entre expresar que no se sabe nada del asunto que se investiga y en el juicio establecer la

defensa de coartada? En vez de existir inconsistencia lo que hay es compatibilidad. Su defensa es al efecto de que no estaba en el sitio en que se alega ocurrieron los hechos. Pretender que debió desde el principio expresar dónde estaba es negarle indirectamente la protección que le concede la disposición constitucional. No hay diferencia alguna en que el apelante en la etapa investigativa y antes de celebrarse la vista preliminar expresara que no sabía nada y el que en dicha vista se mantuviere en silencio. Pretender que la disposición constitucional no cobija a un ciudadano que sin asistencia de abogado expresa que no sabe nada del asunto que se investiga, pero que tiende su palio protector sobre un acusado que aconsejado por abogado informa que no declara porque su testimonio puede incriminarlo, es retroceder en el desarrollo del derecho a la época en que solo se le hacía justicia a quien conocía las intrincadas reglas del juego. Hace tiempo que ese concepto de la justicia ha dejado de tener vigencia en nuestro medio.

▇▇▇ No estuvo justificado el fiscal en hacer resaltar en su contrainterrogatorio el hecho de que durante la investigación ni en la vista preliminar el acusado no interpusiera la defensa de coartada. No se justificaba que el fiscal hiciera referencia a su silencio durante la vista preliminar, por el hecho de que optó por declarar en su propia defensa en el día del juicio.

Invocando a *Pueblo* v. *Archeval*, 74 D.P.R. 512, 515 (1953) donde expresamos que "una vez que el acusado se sienta a declarar, se convierte en un testigo como cualquier otro y está sujeto a las mismas reglas y procedimientos en cuanto a la pregunta y repregunta que cualquier otro testigo", el Procurador sostiene que el fiscal podía inquirir del acusado el porqué no había presentado como defensa la coartada durante la investigación del caso y al celebrarse la vista preliminar.

Antes de considerar la aplicabilidad de la disposición constitucional es pertinente apuntar que la Regla 74 de las de Procedimiento Criminal de 1963 dispone que el acusado no está obligado a notificar al fiscal que su defensa es una coartada hasta diez días antes de la celebración del juicio.[1] El acusado cumplió con la Regla notificando al fiscal en tiempo.

También debe tenerse en cuenta que la regla invocada por el Procurador es de aceptación general y que en la jurisdicción federal tiene vigencia según está expuesta en *Caminetti* v. *United States*, 242 U.S. 470 (1917).

El precepto constitucional que garantiza a todo ciudadano el derecho a no ser testigo en su contra se remonta al Siglo XVI, Corwin, *The Supreme Court's Construction of the Self-Incrimination Clause*, 29 Mich. L. Rev. (1950). Es una garantía para proteger al inocente. De ahí que el Tribunal Supremo de los Estados Unidos por voz del Juez Harlan se expresara así en *Grunewald* v. *United States*, 353 U.S. 391 (1957) a la pág. 421:

"No necesitamos detenernos mucho para reiterar nuestra posición, así como sostuvieron las dos cortes de instancia, de que no puede surgir ninguna implicación de culpabilidad de la invocación por Halperin, de su privilegio a la Quinta Enmienda hecho ante el gran jurado. Un reciente reexamen de la historia y significado de la Quinta Enmienda ha enfatizado nuevamente que una de las funciones básicas del privilegio es el proteger

---

[1] La Regla dispone:

"Cuando el acusado hiciere alegación de no culpable e intentare establecer la defensa de incapacidad mental en el momento de la alegada comisión del delito imputádole, o cuando su defensa fuere la de coartada, deberá, por lo menos diez días antes del juicio, presentar en el tribunal un aviso al efecto, con notificación al fiscal. Si el acusado no presentare dicho aviso no tendrá derecho a ofrecer evidencia tendente a establecer tales defensas. El tribunal podrá, sin embargo, permitir que se ofrezca dicha evidencia cuando se demostrare la existencia de causa justificada para haberse omitido la presentación del aviso. En tal caso, el tribunal podrá decretar la posposición del juicio a solicitud de El Pueblo, conceder permiso para la reapertura del caso de El Pueblo, o proveer cualquier otro remedio apropiado."

al inocente. Griswold, The Fifth Amendment Today, 9–30, 53–82. 'Muchos, aun aquellos con mejor conocimiento, miran a este privilegio como un refugio para los malhechores. También presumen rápidamente que aquellos que lo invocan son o culpables del crimen o cometen perjurio al invocar el privilegio'. *Ullman* v. *United States*, 350 U.S. 422, 426. Ver también *Slochower* v. *Board of Higher Education*, 350 U.S. 551, cuando, en el mismo término, esta Corte dijo a las páginas 557–558: 'El privilegio sirve para proteger al inocente que de otra forma podría ser atrapado por circunstancias ambiguas.' "

En Puerto Rico la Constitución establece igual que la Quinta Enmienda que "nadie será obligado a incriminarse mediante su propio testimonio." Pero en la jurisdicción federal la disposición que la implementa es de carácter estatutario. Ver 18 U.S.C.A. sec. 3481.([2]) En nuestra jurisdicción la propia Constitución dispone que "el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra." La posición del Procurador General es al efecto de que esa garantía constitucional cede ante la regla que expusimos en *Archeval*.

Tres casos del Tribunal Supremo de los Estados Unidos, *Raffel* v. *United States*, 271 U.S. 494 (1926); *Grunewald* v. *United States*, supra y *Stewart* v. *United States*, 366 U.S. 1 (1961) son pertinentes a la cuestión planteada.

*Raffel* presenta la situación siguiente. Un testigo contra Raffel declara en un juicio anterior que éste había hecho ciertas admisiones que establecían su culpabilidad. En ese juicio Raffel no declaró. En el segundo juicio el testigo repite lo mismo. Raffel entonces opta por declarar para negarlo. Se permitió usar el silencio de Raffel en el primer juicio para impugnar su testimonio en el segundo.

---

([2]) "En el juicio contra toda persona acusada de la comisión de algún delito contra los Estados Unidos . . . la persona acusada podrá, si así lo solicita, ser testigo competente. El no hacer tal solicitud no deberá crear ninguna presunción en su contra."

Parece ser opinión aceptada que este dictamen ha perdido virtualidad a la luz de opiniones posteriores y que ahora pasamos a considerar.

En *Grunewald* un coacusado de nombre Halperin al deponer ante el gran jurado invocó la Quinta Enmienda cuando se le hicieron una serie de preguntas que se había negado a contestar ante el gran jurado. Se le permitió entonces al fiscal confrontar al acusado con el hecho de que había invocado el privilegio ante el gran jurado. El juez al instruir al jurado hizo claro que la invocación del privilegio podrían considerarla solo en cuanto afectaba la credibilidad del testigo, pero que no podía hacer inferencia alguna ni de inocencia ni de culpabilidad. El tribunal revocó la sentencia por entender que se cometió un error en el contrainterrogatorio perjudicial al permitir hacer referencia al hecho de que el acusado invocó la Quinta Enmienda ante el gran jurado.

El Juez Black emitió una opinión concurrente con la cual estuvieron de acuerdo el Juez Presidente y los Jueces Asociados Douglas y Brennan en la cual expuso:

". . . Coincido con la Corte en que fue un error el tachar la credibilidad de Halperin por alegar un privilegio constitucional, pero no baso mi conclusión, como la corte, en las circunstancias particulares de este caso. No se me ocurre pensar en ninguna circunstancia especial que pueda justificar el uso de un privilegio constitucional para desacreditar o declarar culpable a uno que lo invoca. La eficacia de los privilegios constitucionales se destruye grandemente si se penaliza a las personas por invocarlos. Parece particularmente incongruente e indefendible por las cortes, las cuales existen y actúan solamente bajo la Constitución, el llegar a inferencias de falta de honestidad de la invocación de un privilegio conceptuado valioso y salvaguardado en la Constitución. Hasta el punto en que la aprobación de tal regla en *Raffel* v. *United States*, 271 U.S. 494, tenga vigencia después de *Johnson* v. *United States*, 318, 196–199, yo creo que el caso de *Raffel* debe ser expresamente revocado."

En el caso de *Stewart* el Tribunal Supremo de los Estados Unidos se enfrenta nuevamente con la cuestión. En este caso la opinión, contrario a *Grunewald*, invoca la disposición constitucional (Quinta Enmienda). Ver Sobel, *Self-Incrimination "Federalized"*, 31 Brooklyn L. Rev. 1, 43 (1964).

Stewart fue acusado de asesinato. Su principal defensa fue locura. En dos ocasiones en que fue convicto y revocadas las sentencias no declaró en su defensa. En el tercer juicio optó por hacerlo. Las preguntas que le hizo la defensa tenían el obvio propósito de demostrar su desequilibrio mental. Sus contestaciones no eran responsivas. En el contrainterrogatorio sus contestaciones fueron iguales. Al terminar el fiscal, hizo el siguiente comentario en forma de pregunta: "Willie, you were tried on two other occasions." "This is the first time you have gone on the stand, isn't it, Willie?"

La defensa solicitó se decretara un *mistrial*. El fiscal ripostó que el jurado tenía derecho a conocer de ese hecho. El juez sostuvo al fiscal y el acusado fue condenado por tercera vez. La Corte de Apelaciones conoció de la apelación *in bank*. Confirmó por una votación de cinco a cuatro. El Tribunal Supremo revocó.

Ante el Supremo Federal el gobierno concedió que fue impropio hacer referencia al silencio mantenido en los juicios anteriores, pero que el error no fue perjudicial. La Corte apunta que considera correcta esa concesión ya que ". . . en ningún caso esta Corte ha insinuado que existe tal inconsistencia básica entre mantener el silencio en un juicio y el declarar en uno posterior o que el hecho de un previo silencio pueda ser usado para impugnar cualquier testimonio de un acusado que elige declarar en un juicio posterior." Al igual que en *Grunewald* la sentencia fue revocada.

En *Miranda* v. *Arizona*, 384 U.S. 436 (1966) la Corte expresó en el escolio 37 que aparece a la página 468: "De acuerdo con nuestra decisión de hoy, resulta impermisible el penalizar a un individuo por ejercitar su privilegio a la

Quinta Enmienda cuando se encuentra bajo custodia e investigación policíaca. La parte acusadora no puede, por lo tanto, usar en el juicio el hecho de que él guardó silencio o invocó su privilegio ante la acusación."

En *Fowle* v. *United States*, 410 F.2d 48 (9th Cir. 1969) un caso que presenta hechos muy similares a los del presente, se hace un abarcador estudio de la cuestión que en éste consideramos. Fowle fue acusado de poseer ilegalmente heroína y cocaína. En el juicio declaró. Explicó que había sido inducido a actuar en la forma en que lo hizo por un agente del gobierno y que en todo momento entendió que estaba cooperando con los agentes federales. En el contrainterrogatorio el fiscal le preguntó si al ser arrestado le había informado lo que acababa de declarar a las autoridades. Contestó que no y el fiscal en su informe al jurado expresó que al considerar la veracidad de la declaración del acusado debían tener en cuenta que lo razonable hubiera sido que al ser arrestado le hubiera informado a los agentes federales de lo que ahora declaraba en el juicio. Al considerar el punto de que el propósito del contrainterrogatorio y del comentario fiscal era impugnar la credibilidad del testimonio del acusado el tribunal expresó: "Por otro lado, si Fowle testifica, como lo hizo, la admisión a que fue forzado al efecto de que permaneció en silencio cuando fue arrestado no le es menos perjudicial en la determinación definitiva de su culpabilidad. No es probable que todos los miembros del jurado encontraran sicológicamente posible limitar la aplicación de tal prueba al propósito limitado para el cual fue admitida—la de impugnarle—no obstante lo adecuado de las instrucciones al jurado dadas por un juez de instancia cuidadoso. [Citas]."

El caso de *Fagundes* v. *United States*, 340 F.2d 673 (1st Cir. 1965) también presenta una situación de hechos similar a la del caso de autos. Un acusado declara en el juicio que se le celebra y su defensa es una coartada. El fiscal

le pregunta que por qué al ser arrestado no protestó de su inocencia y por el contrario pidió ver a un abogado y por qué cuando lo llevaron ante el comisionado federal no alegó su defensa de coartada. Su propósito al así interrogarlo fue impugnar la credibilidad del acusado y desacreditar su defensa de coartada.

Al considerar la cuestión, la Corte de Apelaciones expresó:

"Cuando uno se sienta a declarar en su propia defensa por supuesto que pone en controversia su credibilidad como testigo. A pesar de eso, entendemos que para ser usado con el propósito de impugnación, permitir prueba sobre la negativa a declarar y la solicitud de asistencia de abogado al ser arrestado constituye un error que causa la revocación. En primer lugar esta prueba es ambigua. Las manifestaciones de Fagundes cuando fue arrestado pueden interpretarse como indicativas de que se amparó en sus derechos constitucionales al igual que para dar base a una inferencia de que su defensa de coartada fue concebida posteriormente. No hay nada que indique cual interpretación es más probable. *Cf. Grunewald* v. *United States,* 353 U.S. 391, 415–524, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). En segundo lugar nosotros entendemos que el permitir a un jurado llegar a cualquier inferencia adversa al acusado por éste haberse amparado en su derecho constitucional a permanecer en silencio y a estar asistido por un abogado constituye un error que produce la revocación. El derecho al silencio durante el arresto es similar con el derecho a declinar sentarse en el banquillo de testigos en su propia defensa. *Helton* v. *United States,* 221· F.2d 338, 341–342 (5th Cir. 1955).

Lo mismo puede decirse en relación con la omisión de Fagundes de presentar su defensa de coartada cuando compareció ante el Comisionado. Estaba dentro de sus derechos al no ayudar al gobierno descubriendo su defensa antes del juicio. Tiene derecho a nuevo juicio."

Ver además *Dean* v. *Commonwealth,* 166 S.E.2d 288 (Va. 1969); *United States* v. *Brooks,* 12 U.S.C.M.A. 423 (1961); *Canada* v. *State,* 117 So. 398 (Ala. 1928); *Bunkley* v. *State,* 27 So. 638 (Miss. 1900); *State* v. *Davis,* 226 N.E.2d 736 (Ohio 1967); *People* v. *Russo,* 295 N.Y.S. 457 (1937); *Smith-*

*son* v. *State*, 155 S.W. 133 (Tenn. 1913) ; *Armstrong* v. *State*, 125 S.W.2d 578 (Texas 1939) ; *Eads* v. *State*, 147 S.W. 592 (Texas 1912) ; *Hays* v. *State*, 274 S.W. 579 (Texas 1925) ; *Richardson* v. *State*, 27 S.W. 139 (Texas 1894) ; Nota: 30 Geo. Wash. L. Rev. 529 (1962). Pero véanse *Sharp* v. *United States*, 410 F.2d 969 (5th Cir. 1969) ; *State* v. *Word*, 456 P.2d 210 (N.M. 1969).

De lo expuesto, vemos que la regla invocada por el Procurador no puede utilizarse para subvertir derechos garantizados por la Constitución. Y que por el hecho de que el acusado declare en su propia defensa en el juicio no renuncia retroactivamente a la protección constitucional en que se ha amparado durante los procedimientos anteriores al juicio.

Se declarará sin lugar la reconsideración solicitada.

El Juez Presidente Señor Negrón Fernández no intervino. Los Jueces Asociados Señores Rigau y Torres Rigual concurren en el resultado.